**Walter Joe BROWN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 86–148.**

Supreme Court of Wyoming.

May 15, 1987.

Wyoming Public Defender Program, Leonard D. Munker, Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Allen C. Johnson, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Terry L. Armitage, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

Appellant Walter Joe Brown was convicted by a Uinta County jury of incest and sentenced to the penitentiary for a term of not less than fifty-nine months nor more than sixty months. In this appeal he urges three issues:

"I

"Whether the district court committed error allowing testimony concerning prior bad acts of Appellant.

"II

"Whether the district court committed error by allowing the testimony of Dr. Reisinger concerning the truthfulness of the complaining witness.

"III

"Whether the district court abused its discretion in sentencing Appellant to a term of 59 to 60 months in the Wyoming State Penitentiary."

We will affirm.

By an amended information appellant was charged with sexual intrusion or sexual contact, with his fifteen-year-old daughter, in violation of § 6–4–402(a) and (b), W.S.1977 (Cum.Supp.1985) which provides in pertinent part:

"(a) A person is guilty of incest if he knowingly commits sexual intrusion, as defined by W.S. 6–2–301(a)(vii), or sexual contact, as defined by W.S. 6–2–301(a)(vi), with an ancestor or descendant or a brother or sister of the whole or half blood.  * * *

\*      \*      \*      \*      \*      \*

"(b) Incest is a felony punishable by imprisonment for not more than five (5) years, a fine of not more than five thousand dollars ($5,000.00), or both."

At trial the victim testified that appellant, her father, had sexual intercourse with her four times and had touched her sexually without intercourse approximately twenty times.  The victim could not remember the exact date of the last incident of sexual intercourse, but narrowed it down to a Monday, either the 12th or 19th of August, 1985.  She fixed the time of the week as being a Monday because her mother attended art classes on Mondays.

She further testified that she did not immediately tell anyone about the incestuous relationship because she thought it was supposed to be a secret and was afraid. The victim testified that she was fifteen years of age at time of trial and that her father initiated sexual activity with her when she was eleven years old.

Over the objection of appellant the victim's half-sister testified that appellant had committed incest upon her and described a course of conduct involving sexual intercourse or sexual contact over a period of several years.  This witness is the adopted daughter of appellant and the half-sister of the victim.  The victim's half-sister further testified that when she was about six years old her adoptive father started to sexually abuse her, and first had sexual intercourse with her about two years later.

I

Appellant contends that the testimony of the victim and her half-sister implicating him in prior sexual abuse was improperly admitted into evidence and that Rules 403 and 404, Wyoming Rules of Evidence, prohibit such testimony.

Rule 404, W.R.E., provides, in part:

"(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"\* \* \*

"(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to- prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of *motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*"  (Emphasis added.) [1]

---

1.  The nine circumstances listed in Rule 404(b), Wyoming Rules of Evidence, under which evidence of other crimes may be found relevant and admissible is not exclusive but rather is merely illustrative.  *United States v. Masters,* 622 F.2d 83 (4th Cir.1980); and *United States v. Beechum,* 582 F.2d 898, n. 15 (5th Cir.1978). Rule 404(b), Federal Rules of Evidence is identical to Rule 404(b), W.R.E.  Therefore, we find federal cases addressing this rule persuasive.

   We have previously recognized exceptions to the 404(b) exclusionary rule other than those catalogued in the rule.  Other jurisdictions have characterized other exceptions " * * * where the evidence of other criminal activity forms part of the history of the event or serves to enhance the natural development of the facts.  * * * " *Commonwealth v. Evans,* 343 Pa.Super. 118, 494 A.2d 383, 390 (1985).  This exception has also been characterized as the "same transaction rule" or "complete story" exception.  Justice Urbigkit in writing the opinion in *Crozier v. State,* Wyo., 723 P.2d 42, 49 (1986), characteriz-

*Elliott v. State,* Wyo., 600 P.2d 1044 (1979), a sexual assault case, is similar to the case before us. In that case the victim's older sister testified regarding three prior instances of sexual assault involving appellant, the victim's stepfather, and herself. There we said:

"Our analysis of cases from other jurisdictions leads to the conclusion that in recent years a preponderance of the courts have sustained the admissibility of the testimony of third persons as to prior or subsequent similar crimes, wrongs or acts in cases involving sexual offenses. Among the grounds relied upon for the admissibility of such evidence is that it is admissible to show motive or to show plan, with various phrases being used by the courts to describe those concepts. [Citations.]

"We note that in cases involving sexual assaults, such as incest, and statutory rape with family members as the victims, the courts in recent years have almost uniformly admitted such testimony. [Citations.] The description of the events by the victim's sister here, together with the testimony of the victim, persuades us that the conduct described was sufficiently similar to pass the test of relevancy under Rule 404(b), W.R.E., and was, admissible for the purpose of proving the motive of the appellant.

"According to these other courts, the remoteness of the other conduct is a factor to be considered in determining the question of relevancy. In this instance the testimony of the older sister described a time frame of not more than three years prior to this instance, which would not inhibit admissibility of her testimony as involving acts that are too remote.

"As we have indicated, some courts in comparable circumstances have relied upon the common design or plan manifested by the similarity of the prior crimes, wrongs, or acts to justify their admissibility. That reasoning well might fit these circumstances. The conduct described by the witnesses was sufficiently similar to meet that requirement as set forth in the decisions of other courts. In this particular instance, however, we conclude that admissibility of the evidence is justified as proof of motive. In *Valerio v. State,* Wyo., 429 P.2d 317 (1967), we cited several cases as having held that 'testimony about one's previous criminal activity can be introduced in the current trial if the purpose of such introduction is to establish identity, guilty knowledge, intent or motive.' * * * " Id., at 1047–1048.

See also, *Watson v. State,* 180 Ga.App. 82, 348 S.E.2d 557 (1986).

In *State v. Stevens,* 93 Idaho 48, 454 P.2d 945, 950 (1969), the court said:

" * * * Motive is generally defined as that which leads or tempts the mind to indulge in a particular act. 21 Am.Jur.2d Crim.Law § 85, p. 166; Black's Law Dictionary (Rev. 4th ed.). It is distinguishable from intent, which is the purpose to use a particular means to effect a certain result. *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193 (1901). * * *"

In a case such as the one before us, intent is not an issue to be established by the testimony of the older sister. Motive obviously could be. As the New York Court of Appeals said:

" 'Motive,' * * * is an inducement, or that which leads to tempt the mind to indulge the criminal act. It is resorted to as a means of arriving at an ultimate fact, not for the purpose of explaining the reason of a criminal act which has been clearly proved, but for the important aid it may render in completing the proof of the commission of the act when it might otherwise remain in doubt." *People v. Lewis,* 275 N.Y. 33, 9 N.E.2d 765, 768 (1937).

See also, *People v. Elkhatib,* Colo., 632 P.2d 275 (1981); *State v. Segotta,* 100 N.M. App. 18, 665 P.2d 280 (1983); *Rodriguez v. State,* Tex.Cr.App., 486 S.W.2d 355 (1972). In this latter case the court said:

"The term motive is used to express different concepts. As used here, motive

es this exception as the "course of conduct"     exception.

refers to an emotion that would provoke or lead to the commission of a criminal offense. Evidence to show motive is the circumstantial evidence that would appear to cause or produce the emotion. When it is said that evidence going to show motive is admissible, it is meant that the circumstantial evidence is admissible that would appear to cause or produce the emotion that would in turn provoke or incite the commission of the criminal offense. See 1 Wigmore, Evidence, § 117 at 558 (3d ed. 1940) and 2 McCormick and Ray, § 1534 at 382 (2d ed. 1956)." Id., at 358.

Incest involves aberrant sexual behavior—it is a type of sexual deviancy that is difficult to understand. Therefore, a trier of fact might well wonder what would motivate the accused to behave in such bizarre manner. The evidence of prior sexual acts then was probative under the motive exception because of the unusual sexual behavior involved. It seems, however, that motive is usually thought of as the reason the crime was committed. If motive equates to reason, then perhaps appellant's motive for having sexual relations with his younger daughter was that the older daughter was no longer available and the younger daughter was now taking her place. The older daughter's testimony would be admissible for this purpose.

If the accused had a predilection to deviant sexual practices with young female relatives, it would not be unreasonable for the trier of fact to determine that he had a motive to commit the acts complained of by the victim in this case.

Consistent with our holding in *Elliott*, we determine the admission of testimony regarding conduct of appellant described by the victim and her older sister was justified as proof of motive and was sufficiently similar to meet the relevancy requirements of Rule 404(b).

Here, appellant first sexually assaulted the victim and her sister when they were children. He first assaulted both girls by sexual contact; after a year or more he subjected them to sexual intercourse and to oral sex. Appellant told both girls that he

was engaging them in sexual relations to show them how much he loved them.

Rule 403, W.R.E. provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In *Elliott v. State*, supra, at 1049, we said:

"The function of performing the comparisons required by Rule 403, W.R.E., generally is held to be discretionary with the trial court. The fact that the evidence is detrimental to the defendant is neutral. For the prejudice factor to come into play the court must conclude that it is unfair. *United States v. Dolliole*, 597 F.2d 102 (7th Cir.1979). * * * "

Evaluating the evidence in this case in light of our previous decisions and decisions from other courts as well, we cannot say that the danger of unfair prejudice outweighed the probative value of evidence of prior acts of sexual misconduct involving appellant. The spirit of Rule 403 was not violated, and we cannot find that the trial judge abused his discretion.

Interwoven into appellant's argument that admitting into evidence appellant's prior criminal acts violated Rules 403 and 404(b), W.R.E., is a collateral argument that this evidence subjected appellant to double jeopardy. Article 1, § 11 of the Wyoming Constitution provides that no person shall be twice put in jeopardy for the same offense.

At trial the victim testified to prior instances of sexual contact between herself and appellant. There was also an inference that at one time appellant was on probation for sexual offenses involving his daughters. Appellant speculates that the jury may have convicted him of these prior sexual contacts rather than the crime for which he was charged.

Earlier in this opinion we explained in detail the reasons why testimony regarding prior sexual acts was relevant and admissi-

ble. Arguing double jeopardy does not strengthen appellant's contention that evidence regarding prior sexual misconduct was improperly admitted. The authority cited by appellant only addresses general and vague propositions with respect to double jeopardy. We fail to see how such authority has any bearing on the circumstances of this case. Appellant has failed to cite persuasive authority or make cogent argument in support of his double jeopardy contentions. We must assume that the jury convicted appellant for the crime charged and followed the court's instructions.

In summary, we find no error in admitting evidence of prior sexual misconduct.

## II

Dr. Mercedes Reisinger, a clinical psychologist, testified on behalf of the state. In her testimony she described the typical pattern of behavior between a father and daughter in an incestuous relationship. She described a multi-step progressive pattern of the father treating the child first as a special child and granting her special favors. The father's behavior pattern toward the child then progresses to include such things as fondling and other sexual contacts, eventually resulting in sexual intercourse. The pattern also includes the father inducing the child to keep these activities secret within the family. The next progressive step is for the father to deny the child certain privileges unless she reciprocates in a sexual manner. Because of this type of pressure the child may report the aberrant sexual behavior of her father.

The witness also testified without objection that in her opinion the prosecutrix was the victim of sexual molestation. Dr. Reisinger testified that she gave several personality tests to the victim. One of the tests was the Minnesota Multiphasic Personality Inventory (M.M.P.I.). In chambers the court told the prosecution that he would not allow Dr. Reisinger to tell the jury that the victim had told her about the sexual assault in August, 1985, nor would he allow the witness to say that she believed the victim was telling the truth. Dr. Reisinger was asked if there were any measures of validity or reliability built into the testing procedure. She answered:

"The M.M.P.I., the Minnesota Multiphasic Personality has validity scales. Three, as a matter of fact. One is called the lie scale, which is a scale that measures overt lying, admission to things that would be extremely improbable. A K scale, which is a subtle validity scale that measures deception or a desire to cover up approach—in terms of approaching the tests in terms of being self protective and then there's also an F scale, which is a scale that measures exaggeration or exaggeration of information being presented or of symptoms. Those are built into the M.M.P.I., yes."

The witness was then asked:

"Q. Were there any significant results from any of the three scales, the lie scale, the K scale or the F scale that you just talked about?

"A. They were all within normal limits.

"Q. Meaning what?

"A. Meaning that the individual approached the test from a very truthful fashion, not exaggerating or covering up."

Appellant did not object to this testimony from Dr. Reisinger. He had previously been assured that he had a valid objection to the witness vouching for the truthfulness of the victim. Consequently, his failure to object to these questions is some indication that he recognized in context that the witness was only furnishing information as to the attitude of the victim with respect to the testing procedure.

Appellant contends on appeal that Dr. Reisinger did in fact testify as to the victim's truthfulness inappropriately and contrary to the limitation put on her testimony by the court. We do not agree.

Dr. Reisinger testified what the results of the evaluation indicated to her, that is, how the victim responded to the psychological tests. The witness did not testify that the victim was a truthful person in general nor did she testify that she believed the testimony. The most that can be gleaned

from this portion of Dr. Reisinger's testimony is that the built-in validity scales in the M.M.P.I. test showed that the victim's response to this test was truthful and not given to exaggeration or cover up.

In *Smith v. State*, Wyo., 564 P.2d 1194, 1200 (1977), we said that an expert " * * * cannot testify as to the truthfulness of the defendant's version [of the incident] * *." See also, *Lessard v. State*, Wyo., 719 P.2d 227 (1986). We do not believe that the principles in *Smith* and *Lessard* were violated here.

No objection was made to Dr. Reisinger's testimony that in her opinion the prosecutrix was the victim of sexual molestation nor was there an objection to the testimony that the victim approached the M.M.P.I. test from a truthful fashion. However, appellant contends that we should consider this testimony under the plain error doctrine.

In *Hampton v. State*, Wyo., 558 P.2d 504, 507 (1977), we said:

"* * * When review is sought under the plain error doctrine this Court must be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, that is, we are entitled to know the particular facts. [Citations.] Further, the proponent of plain error must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. [Citations.] If these criteria are met, the error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept procedurally expressed in Rule 49(a), W.R. Cr.P. * * *"

We do not believe that the plain error doctrine applies to the circumstances of this case. Appellant has not demonstrated the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. We find no reversible error in admitting Dr. Reisinger's testimony.

## III

In his final issue on appeal, appellant contends that the court abused its discretion in sentencing him to a term of fifty-nine to sixty months in the penitentiary.

We have frequently addressed this issue in recent cases. In *Carey v. State*, Wyo., 715 P.2d 244, 249 (1986), we held that " * * we do not set aside a sentence within the legislatively mandated minimum and maximum terms in the absence of a demonstration of clear abuse of discretion. * * *"

In defining an abuse of discretion, we quoted *Martinez v. State*, Wyo., 611 P.2d 831 (1980) in *Martin v. State*, Wyo., 720 P.2d 894 (1986), saying that a court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. Each case must be determined on its peculiar facts.

In the case before us, appellant was convicted of incest in violation of § 6–4–402(a) and (b), W.S.1977, (Cum.Supp.1985). The maximum term of imprisonment under this statute is five (5) years. Appellant was sentenced to a term of not less than fifty-nine months nor more than sixty months.

At the sentencing hearing the trial judge indicated in detail the purposes of sentencing generally, and the reasons for sentencing appellant to not less than fifty-nine months nor more than sixty months. He said:

"Now, with respect to sentence, Mr. Brown, the Court has considered probation. * * * The Court finds that probation was tried with you once and that because probation was tried once and it failed, then probation is no longer appropriate. In addition to that, the Court finds that probation, under the circumstances of your particular case, would unduly depreciate the seriousness of the offense to which you have committed. So the Court will not grant you probation, Mr. Brown.

" * * * The Court noted aggravating circumstances in the case with no mitigating circumstances.

\* \* \* \* \* \*

"The first one [aggravating circumstance] that the Court would mention is that the victim in this case was particularly vulnerable and there isn't any question about that from the evidence in this case. Not only was this a little girl, but this was your own little girl. She was not only vulnerable because she was young, but she was also vulnerable because she was malleable, controllable by you as her father.

\* \* \* \* \* \*

"The second aggravation is that you are a repeat offender under circumstances in which everything was done to prevent you from doing what you did and under circumstances in which everything was done to help you help yourself and to prevent you from doing the things that you did. In the process, you see, Mr. Brown, I'm focusing on you and trying to help you. You spit on the system and you victimized the system. * * *"

We would be hard pressed to find that the trial court abused its discretion in imposing the sentence in this case.

■ Appellant complains that the district court violated § 7–13–201, W.S.1977, which states:

"When a convict is sentenced to the state penitentiary, otherwise than for life, for an offense or crime, the court imposing the sentence shall not fix a definite term of imprisonment, but shall establish a maximum and minimum term for which said convict shall be held in said prison. The maximum term shall not be longer than the longest term fixed by law for the punishment of the offense of which he was convicted, and the minimum term shall not be less than the shortest term fixed by law for the punishment of the offense of which he was convicted."

He contends that the trial court in effect imposed a determinate sentence because there was only one month between the maximum and minimum sentence.

In *Duffy v. State*, Wyo., 730 P.2d 754 (1986), we addressed this issue. In that case there was a difference of one day between the maximum and minimum sentence. In *Duffy*, we held that the sentence imposed did not violate § 7–13–201, W.S. 1977, and stated reasons.

In the case here, we hold that the sentence imposed by the court did not violate the statute, and we adopt the same rationale stated in the *Duffy* case.

We find no reversible error, and accordingly affirm.

CARDINE, J., filed a specially concurring opinion.

URBIGKIT, J., filed a dissenting opinion.

MACY, J., filed a dissenting opinion.

CARDINE, Justice, specially concurring.

I begin this special concurrence with the notion that in this case the testimony of the victim's older sister that appellant had subjected her to sexual intercourse before shifting his attention to the victim was admissible. The difficulty I have is in finding a clear rule of law that will tell us in the future when bad-act evidence involving other incidents or third parties is admissible and when it is not admissible. Justice Urbigkit, in his dissent, seems to conclude that other bad-act evidence is admissible only if it involves the victim and not if it involves a third party or incidents other than the crime charged. Such rule would be too restrictive and not in accord with the exceptions of Rule 404(b), W.R.E., which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Rule 404(b) does not prohibit bad-act evidence that involves incidents other than the crime charged and persons other than the victim. It is clear from Rule 404(b) that

the list of exceptions allowing for the introduction of other-act evidence is illustrative only and not intended to be exclusive. The exceptions in Rule 404(b) are merely a list of examples in which the evidence may be admitted, but it is not required that the evidence be within one of the exceptions to be admitted. Such evidence may be admitted to "corroborate" the victim. Wright & Graham, Federal Practice and Procedure: Evidence § 5248 (1978) at 520. Such evidence has also been admitted for impeachment purposes, although we held it could not be admitted for that purpose in *Kwallek v. State*, Wyo., 596 P.2d 1372 (1979). In *Crozier v. State*, Wyo., 723 P.2d 42 (1986), we said that such evidence was admissible as a "complete story" exception, part of the history of the event, and as a "course of conduct" exception. Neither the corroboration, impeachment, complete story, nor course of conduct exception is listed as an exception to the exclusionary rule in Rule 404(b), W.R.E.

Motive has been suggested as the exclusionary rule exception that allowed the court, in its discretion, to receive the other bad-act evidence in this case. There is support for that proposition in *Elliott v. State*, Wyo., 600 P.2d 1044 (1979), wherein we specifically held that this type of evidence was admissible for the purpose of proving the motive of appellant. In 2 D. Louisell and C. Mueller, Federal Evidence, § 140 (1985) at 210, motive is described as that which

> "serves to explain all kinds of evidence in the case, to make understandable or at least believable that which might otherwise seem obscure and incredible * * * [such as] sexual desires."

Concededly it is not often that the proposed evidence fits squarely into one of the exceptions to the exclusionary rule. Other bad acts almost always have some character connotations, although admissible for some other legitimate purpose. It seems clear that in all cases the court, after determining that the offered evidence is relevant, not too remote, and more probative than prejudicial, should also determine that it is offered primarily for some legitimate evidentiary purpose and not primarily for the purpose of showing the character of the accused.

URBIGKIT, Justice, dissenting.

I

*Prior Bad-Acts Testimony Introduced For Substantive Evidence of Guilt*

In conclusion on Issue I, justifying "bad acts" testimony to prove guilt, the court moves further in the direction of empirical substitution of adverse character for substantive fact evidence as the basis for conviction, a result with which I strongly disagree and from which I dissent.

The majority's reliance on the "same transaction rule," "complete story," or "course of conduct" evidence admissibility principle of *Crozier v. State*, Wyo., 723 P.2d 42 (1986), is misplaced. In *Crozier*, we permitted a witness' testimony that the defendant asked her to go find some marijuana. In that case the testimony was relevant to whether the murder victim was still alive, and revealed a period of time when the defendant and his victim were left alone on the night the defendant killed the victim. Clearly, the testimony referring to the marijuana helped to clarify what happened that night by revealing the circumstances surrounding the commission of the crime. That testimony focused on the same transaction.

This case is different. The victim's half sister testified that she too had been a victim of the defendant's sexually abusive practices. Her testimony did not clarify the circumstances surrounding the crime with which defendant was charged. Rather, she testified about irrelevant bad acts remote in time (years) and entirely unrelated to the incident in question. I believe such testimony is not properly admissible under Rule 404(b), W.R.E. It does not serve to "complete the story." Instead it serves only to prejudice the jury. Cf. *Watson v. State*, 180 Ga.App. 82, 348 S.E.2d 557 (1986).

The purpose of Rule 404 is (1) to prevent the conviction of an accused because he is a "bad man" who deserves to be punished,

not because of the crime charged, but because of prior or subsequent misdeeds, and (2) to preclude the inference that because he has committed other crimes he is more likely to have committed the crime for which he is charged. *Bishop v. State,* Wyo., 687 P.2d 242, 247 (1984), cert. denied 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985); *United States v. Phillips,* 599 F.2d 134 (6th Cir.1979); *State v. Scott,* 318 N.C. 237, 347 S.E.2d 414 (1986); *Commonwealth v. Evans,* 343 Pa.Super. 118, 494 A.2d 383, 390 (1985).

Evidence that the defendant has in the past committed sex crimes with other victims is highly prejudicial and precisely the sort of prior bad acts-evidence Rule 404 seeks to exclude. The jury in this case could have concluded from the half sister's testimony (for which accusations criminal proceedings had been concluded) that the defendant was a bad man deserving punishment for his prior misdeeds. The jury could also have inferred that, based on the prior-acts testimony, he probably committed this crime with this victim as well. The testimony was violative of Rule 404 because its introduction was an attempt to show that the defendant acted in conformity with a criminal character. Extending the Rule 404(b) exception to encompass remote acts with other victims renders the general intent of Rules 403 and 404 meaningless.

The majority rely on *Commonwealth v. Evans,* supra, as persuasive. That court characterized the Rule 404(b) exception as intending to admit evidence "where [that] evidence of other criminal activity forms part of the history *of the event* or serves to enhance the natural development *of the facts.*" (Emphasis added.) 494 A.2d at 390.

I agree with the *Evans* court, but I believe this majority misconstrue that court's use of the quoted language. The *Evans* court limited acceptable evidence to that evidence involving *the event,* i.e., the crime with which the defendant is charged, or related to *the facts* (surrounding the crime). Today the majority leaps beyond

this limitation inherent in the language used by the *Evans* court.

I do not agree with the majority's apparent perception that the defendant's prior conduct years ago with a different victim is part of the history of the event (the crime) with which the defendant was charged. Neither can I conceive how that conduct relates to *the facts* the State must prove in order to obtain the defendant's conviction for the crime charged.

I would rule that the "same transaction" rule should never allow prior acts with other victims so remote in time that these prior acts do nothing to "complete the story," *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), cert. denied 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977) and do not help the jury to understand the events immediately involved in the charged offense.

Confusion exists in attributing history of the event, same-transaction or complete-story evidence as an exception to Rule 404. Actually, such evidence is not an exception, but simply is not Rule 404 evidence and does not conflict with or encompass the categories of exceptions stated in Rule 404(b). This is true because Rule 404(b) involves other crimes, wrongs or acts and not the general circumstances immediately involved in proof or denial of guilt. This is the reason that *Crozier v. State,* supra, was carefully written to define that the appealed issue did not involve "bad acts" evidence. In this case, it can be considered and consequently is not an issue on appeal, that testimony of the prosecutrix of other events involving her and the defendant was properly admissible under *Crozier.*

Here, however, in a fashion not directly utilized by the trial court in decision nor specifically addressed in the briefs as a dispositive issue, this court will hold that the bad-act evidence involving the half sister is admissible *to prove motive* as delineated in Rule 404(b). The initial problem with using this contention as a logical proposition is that it leads to a determination that having done something once shows motive to have later done it again. In numerical terms of logic, the likelihood is

equal that having done it once, you *will not do it again* based on the intangible character of human reaction as to whether the result was pleasurable or painful. The reasoning and derived conclusion presented by this court as its contention lacks logical persuasion. Actually, motive has now been reconceptualized to be disposition, inclination or propensity, or, in other words, bad character. By flight of language, the age-old evidentiary exclusion has been abrogated so that the conviction is based on character and not guilt. Those among us, if any there may be, who are absolutely pure in all character should take comfort and joy, and then the rest and most will tread with justified trepidation and fear.

I have another objection to this merely derived justification for use of bad-act evidence to convict Brown.[1] Hard evidence of a probative conclusion could easily justify the earlier criminal-charge resolution of Brown's problem with the half sister case. It is more likely than not, and without regard for the current and charged offense that the jury would decide guilt to affix additional punishment for defendant as then deserved, whether or not he is now guilty of this later offense. This is generally defined in the criminal-prosecution business and jury conception as the bad-guy syndrome. A double-jeopardy result is achieved by twice being punished for the same offense. See exhaustive and thoughtful discussion including the four-part review required, *State v. Mayfield,* 302 Or. 631, 733 P.2d 438 (1987).

A historical perspective is required to judge the illogic of our present attainment on bad-acts-evidence admissibility in criminal cases and particularly as now applied as a sub subcategory to the family sexual-abuse situations. The initial perspective was that the defendant should be convicted on present evidence of the offense and not unfavorable character, bad reputation, or history. To this structure came the admissibility of similar facts as relevant, except relating merely to disposition. This is described by the classic analysis as the original rule or the English rule. Apparently, from concern that the English rule accommodated a denial of the basic thesis of conviction for guilt, a reverse approach was adopted as called by Stone in his seminal discussion as the spurious rule, Stone, *The Rule of Exclusion of Similar Fact Evidence: America,* 51 Harv.L.Rev. 988 (1938). This later principle excluded all similar facts except those falling within a few closed categories as identified and developed in precedent. Consequently, what had occurred was that starting with the nonadmissibility rule to admissibility except relating to disposition, we now have inadmissibility unless falling within exceptions. What the philosophic authorities and text writers originally feared is what we can now observe, that the spurious rule as originally considered to afford greater protection against conviction for reputation has now destroyed both the original standard and the nonadmissibility criteria for disposition as included in the original or English rule.

This court now completes that transfer by defining disposition as motive and by exception, then essentially destroys the century-long cardinal principle of English law that the conviction should be determined by guilt, and not by reputation or prior bad history. The observable corollary is that those unlucky enough to once

1. The basis of motive proof under Rule 404(b) was not utilized by the trial court nor advanced by the State on appeal. Although *Elliott v. State,* Wyo., 600 P.2d 1044 (1979), was cited with its grab-bag of exceptions, appellee said: "It is clear that the testimony of both Kathy and Kate was admissible under Rule 404(b) to establish a continuing course of conduct by Appellant. This course of conduct is unquestionably relevant to the issue of incest occurring on or about August 12, 1985. Furthermore, because this is the typical scenario of a sexual abuse case, with only the victim and accused as witnesses to the incident, prior bad act testimony becomes all the more necessary for its probative value, outweighing the prejudicial effect substantially. There was no abuse of discretion by the trial court in admitting such evidence under Rule 404(b) and 403, W.R.E."

Appellant differentiated *Elliott v. State,* supra, factually on any motive persuasion, and decided and directed his attention to the actual trial-court decision premised on a continuing scheme or plan.

be caught are eternally damned in contradistinction to the lucky who initially escaped appropriate responsibility.

The happenstance function of the American justice system will condemn some and favor the many with accidental absolution. For example, it is possible to conclude that the drug problem of our society would be significantly corrected if each adult who has used an illegal substance at least twice sometime during his or her life would be publicly confined to spend 15 days in jail during the next two months. It is easy to say, both because this writer would not, at least in this category of socially constrained activity, be called to join the throng, and secondly, because the shock of general recognition would shock our social system. There would, in the general context of all contendable criminal misadventures, be the few left to cast the first stone.

"* * * Such evidence has been inadmissible for the patent reason that relevancy values must yield to almost certain dangers of confusion of ideas, wasted time, undue prejudice, and surprise. Because even the most careful and prudent person may be inattentive and neglectful on occasion, a few scattered instances of indifferent behavior will scarcely cast valid light upon his general disposition. From considerations of relevancy and policy, therefore, evidence of specific occasions of indiscretion must be rejected to make way for the reception of reasonable proof." Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma*, 20 Kan.L.Rev. 412 (1971).

Social justice recognizes the determined fact that in criminal conviction there are two classes, the fortuitous, and the unwashed. Whether or not generally accepted or acknowledged as justified reason for subsequent damnation, conviction comes to be realistically premised on disposition, proclivity, or bad luck, as the present basis for guilt ascertainment.

"As there was in England, so in America there is a pervading belief among judges and text writers, which has scarcely been questioned since it arose about 1850, that in the beginning the law said: 'Let no similar facts be admitted', and no similar facts were admitted. So great, runs the thought, was the solicitude of the common law to avoid damning the accused with prejudice, diffusion, and confusion of issues that, however relevant and on whatever issue, similar facts and, above all, similar bad acts of the accused were never admitted." Stone, supra, 51 Harv. L.Rev. at 989.

From the described general principle there came what was variously called the original rule or the English rule which, as an admission exception, excluded similar-facts evidence if otherwise relevant only to disposition.

"The conflict was between the original rule which only excluded similar fact evidence when relevant merely to disposition, and a much broader spurious rule excluding all similar facts except those falling within a few closed categories settled by earlier decisions." Id. at 989. "Another source of confusion, not inherent in the nature of the spurious rule, arises from a perversion into which that rule easily degenerates." Id. at 1031. "Such utter perversions of the object of the original rule are the result of the series of warping tendencies which readily follow from putting the rule into its spurious form of a broad rule of exclusion with exceptions. The broad rule, excluding all offences, in general gives great protection to the accused, for it strictly limits the issues on which relevant evidence of other offences may be admitted. In cases of this last type, however, because attention is concentrated on interpreting the list of exceptions, not only is the requirement of relevance forgotten, but the very object of the original rule—to prevent proof of guilt by proof of propensity to commit—is quite forgotten, and eventually an exception is admitted to the broad rule which admits evidence *precisely* for the reason that the original rule excluded it. The broad rule, which seemed to give greater protection to the accused, has produced a rule depriving him of every shred of protection." Id. at 1033.

In expansive consideration as applied to evidence in prosecutions for sexual offenses, Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 Ariz. L.Rev. 212 (1965), quotes Wigmore and Stone:

"* * * '[F]or nearly three centuries, ever since the liberal reaction which began with the Restoration of the Stuarts, this policy of exclusion, in one or another of its reasonings, has received judicial sanction, more emphatic with time and experience. It represents a revolution in the theory of criminal trials, and is one of the peculiar features, of vast moment, which distinguishes the Anglo-American from the Continental system of Evidence.'"

The author also brings an early and colorful application of the rule from Holt, L.C.J. in *Harrison's Trial* (in 1692), 12 How.St.Tr. 883, 874:

"* * * The defendant was on trial for murder. A witness was offered to testify that the defendant had committed another criminal act three years prior to the trial. Holt rejected this offer saying, 'Hold, hold, what are you doing now? Are you going to arraign his whole life? How can he defend himself from charges of which he has no notice? And how many issues are to be raised to perplex me and the jury? Away, away! That ought not to be; that is nothing to the matter.'" Gregg, supra, 6 Ariz.L.Rev. at 212.

"The standard exceptions of 'motive' and 'intent' to the American or negatively stated rule of exclusion have been distorted by a number of other courts in order to allow evidence of other offenses to be admitted in sexual prosecutions. Though the courts may speak of showing motive or intent, the effect of the decisions is to permit evidence which is relevant only to show the defendant's general disposition to commit sexual crimes. The evidence is admitted even though it is not necessary for the state to prove any special state of mind to establish the crime. Prior offenses are admitted even though they cannot establish any motive

or intent to do the specific act charged." Id. at 225.

Thoughtfully, that author concludes:

"The general refusal of the courts to admit evidence of other offenses or crimes which tend only to show defendant's criminal disposition has been one distinguishing feature of the Anglo-American law of evidence. Courts have adopted and adhered to the rule because of strongly felt and expressed concern for the individual and the protection of his liberty and dignity. The adoption in many jurisdictions of a rigorous rule of exclusion is perhaps an indication of a willingness to take the risk that a larger number of the guilty go free than to risk the conviction of a greater number of the innocent. Possibly there is the belief that there is a greater social cost in condemning the innocent than in allowing more of the guilty to escape punishment. This point is moot. Nevertheless, the rule of evidence excluding other acts showing only the disposition of the defendant for crime has existed and evolved for three hundred years. It seems clear that a serious erosion of the rule in respect to sexual crimes is occurring in several jurisdictions. It is desirable that this development be given serious consideration. Courts which meet this problem should make an effort to rationalize their decisions if they decide to follow the line that sexual offenses constitute a category of crimes to some degree excluded from the rule. Although a number of courts have adopted this position, either expressly or by artificially forcing such offenses into one of the standard exceptions to the rule, few indeed have attempted any analysis of such an exception or provided a convincing justification for it. In crimes in which the prejudices against defendants are likely to be greatest and the danger of false witnessing considerable, an exception is being applied that leaves the accused extremely limited protection against admission of prior or subsequent offenses. Apparently, this has often been done on the simple intuition of

courts that sex offenders are more likely than other criminals to be habitual or compulsive offenders. Such an assumption has little scientific support and has resulted in a rule of evidence that discriminates unfairly against this class of defendants." Id. at 236.

Motive, as distinguished from intent, may be defined as an inducement or state of feeling which compels and tempts the mind to indulge in a criminal act in a specified circumstance in which the normal stimuli were not generally operative to produce the same result.

"* * * It would be more conducive to clearness of thought if the word 'motive,' so misleading in its popular associations, could be abandoned altogether in discussing evidential questions." 1A Wigmore, Evidence § 117 at 1697.

See also 2 Wigmore, Evidence §§ 385–406. I would clearly differentiate the personal-profit issue in an insurance barnburning case, *People v. Lewis*, 275 N.Y. 33, 9 N.E.2d 765 (1937), cited by the majority, and *Rodriguez v. State*, Tex.Crim.App., 486 S.W.2d 355 (1972), where a no-motive offense evidence was reversible. The issue in *State v. Stevens*, 93 Idaho 48, 454 P.2d 945 (1969) was whether the State had to prove motive as a criminal element of attempted grand larceny, and did not involve bad acts as proving motive. *People v. Elkhatib*, Colo., 632 P.2d 275 (1981) was another arson case invoking benefit as motive and not bad-acts evidence. I would not find evidence of the defendant's effort to find a "hit man" as encompassing motive to be separately persuasive either. *State v. Segotta*, 100 N.M. 18, 665 P.2d 280, rev'd on other grounds 100 N.M. 498, 672 P.2d 1129 (1983). See also *State v. Haseltine*, 120 Wis.2d 92, 352 N.W.2d 673 (1984), where the conviction was reversed for improper expert testimony, and also that motive was not in issue in justifying sister other-incident testimony.

One of the clearest and most explicit analyses is found in the well-written opinion of *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364, 365–368 (1954), where the court synthesizes the principles for exclusion, denominates the eight recognized exceptions, and concludes:

"The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. [Citations.] * * *

"The general rule rests on these cogent reasons: (1) 'Logically, the commission of an independent offense is not proof in itself of the commission of another crime.' [Citations.] Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, when offered by the State in chief, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose. [Citations.] (3) 'Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence.' [Citation.] (4) 'Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial.' [Citations.]

*　*　*　*　*　*

"[Eight exceptions enumerated.]

*　*　*　*　*　*

"* * * "Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it

is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected." ' *State v. Gregory,* [191 S.C. 212, 4 S.E.2d 1 (1939) ]; *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923)."

See also *Stiles v. State,* Ala.Crim.App., 500 So.2d 1190 (1985); and *Potts v. State,* Ala. Crim.App., 500 So.2d 1318 (1986). Motive and intent are not synonymous. 1 Wharton's Criminal Evidence § 109 (4th ed.).

"* * * Likewise, in a prosecution for incest, evidence of lewd, lascivious, or abnormal conduct, with the same person, prior to or after the crime charged, is admissible. But evidence of prior incest or some other sex crime, committed with a person other than the complaining party, is generally not admissible. * * *

* * * * * *

"In a prosecution for taking indecent liberties with a child, evidence of other indecent acts, committed upon the same child, is admissible. But evidence of other indecent acts, committed upon a person other than the complaining child, is not admissible." 1 Wharton's Criminal Evidence, supra, § 188 at 819, 824-825.

A footnote count of cited cases in text and appendix, which includes *Elliott v. State,* Wyo., 600 P.2d 1044 (1979), affords no defined majority in opposition or justification of the statement made. In an outstanding book on misconduct evidence, Imwinkel-ried, Uncharged Misconduct Evidence § 3:23 at 61-62, the author comments:

"In reality, the courts are permitting the proponent to introduce propensity evidence in violation of the prohibition in the first sentence of Rule 404(b). Proof of a number of similar burglaries or drug transactions may be probative of the defendant's status as a professional criminal. However, if the similarities are insufficient to establish modus and there is no inference of a true plan in the defendant's mind, the proponent is offering the evidence on a forbidden theory of logical relevance. It is immaterial that there are many instances of similar acts by the defendant; the number of the acts increases the acts' probative value on the issue of the defendant's propensity, but standing alone the number of acts cannot change the propensity quality of the theory of relevance. The courts are illicitly allowing the proponent to prove the defendant's character, disposition, or propensity."

"In the common law system, the prosecutor has traditionally been prohibited from introducing evidence of a defendant's character solely to prove his propensity to commit the crime charged." Note, *Procedural Protections of the Criminal Defendant—A Reevaluation of the Privilege Against Self-Incrimination and the Rule Excluding Evidence of Propensity to Commit Crime,* 78 Harv. L.Rev. 426, 435 (1964).

See also Annot., 77 A.L.R.2d 841; Annot., 2 A.L.R.4th 330; Annot., 88 A.L.R.3d 8; Comment, *Other Crimes Evidence at Trial: Of Balancing and Other Matters,* 70 Yale L.Rev. 763 (1961). See also McCormick on Evidence at 560 (3d ed. 1984); Comment, *A Proposed Analytical Method for the Determination of the Admissibility of Evidence of Other Offenses in California,* 7 U.C.L.A. L.Rev. 463, 471 (1960); Comment, *The Admissibility of Other Crimes in Texas,* 50 Texas L.Rev. 1409, 1414 (1972); Trautman, *Logical or Legal Relevancy—A Conflict in Theory,* 5 Vand. L.Rev. 385, 402 (1952); and Note, *Admissibility of Evidence of Prior Crimes in Murder Trials,* 25 Ind.L.J. 64 (1949).

There is an intrinsic problem with this progression of Wyoming law. The transference of the rule-provided exception of motive by concluding that the occurrence of the first offense, because of demonstrated motive to do, proves the second offense by assuming the existence of a similar motive, leaves no real opportunity for practical application by the trial court, except perhaps to conclude that "anything goes." [2] We assume from first occurrence, and then presume to a second event. This broad and undefined approach neither ascribes rules for admissibility of specific evidence nor affords parameters for conviction of proof of guilt rather than contended prior character or propensity. See *Ex Parte Cofer*, Ala., 440 So.2d 1121 (1983); *People v. Holder*, Colo.App., 687 P.2d 462 (1984); *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959).

Motive should be motive, not propensity or inclination. We cannot escape the axiom that a broadly defined motive exists for everything intentionally done by humans, encompassing either bodily satisfaction or mental gratification. The broad character of the definition importuned by the majority says everything and means nothing, because all conduct is led or tempted by the mind to be indulged unless automatically reactive in nature. The bad-acts evidence in this case did not prove motive. Abhorrent crimes of incest, rape, etcetera, need no judicial postulation to determine character effectuation.

"The protections accorded in theory by the privilege against self-incrimination and the rule excluding propensity evidence are to a great extent circumvented in the actual operation of our legal system. This discrepancy between ideals and realities permits our society to pride itself on its protection of the accused's interests without being forced to sacrifice what appears necessary to effective law enforcement. Although this hypocrisy is occasionally justified as a historical compromise between the interests of the individual and the state, resulting in a 'workable even if clumsy system,' such pragmatism ignores the fact that particular aspects of the existing system are wholly intolerable." *Procedural Protections of the Criminal Defendant—A Reevaluation of the Privilege Against Selfincrimination and the Rule Excluding Evidence of Propensity to Commit Crime*, supra, at 443–444.

See also *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, supra. As an exhaustive review of trial by propensity, see Reed, *Trial By Propensity: Admission of Other Criminal Acts Evidenced in Federal Criminal Trials*, 50 U. of Cin.L.Rev. 713 (1981). The historical analysis of how we got where we are is exceptional.

What we have here is evidence to prove that Walter Joe Brown was a bad guy once and did not learn his lesson, and that he, rather than his unhappy teenage daughter, is the prevaricator of the events for which this criminal proceeding is now presented.

**2.** Slough, supra, 20 Kan.L.Rev. at 411, 416–417, observes:

"In a minority of jurisdictions, the general theory of exclusion has been rejected in favor of a more lenient theory of admission. This minority rule has permitted relevant reference to other crimes, unless relevance bears solely upon a *general disposition* to commit the crime in question. Such evidence is admissible not because it comes within an exception to a rule of exclusion, but because the rule of exclusion is sufficiently narrow to make it inapplicable. There is substantial authority to support the thesis that the minority rule is orthodox, creating, in turn, an inference that the majority trend is heretical. * * "Inasmuch as the majority of American jurisdictions have accepted a broad rule of exclu-

sion riddled by exceptions, [Fn. 21] it may be well to analyze a select number of these exceptions in an attempt to isolate current trends. [Fn. 22]"

"[Fn. 21] The scope of these exceptions is so broad, particularly as interpreted by the courts, as to have prompted the following remarks: '[I]t is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions.' *Trogdon v. Commonwealth*, 31 Gratt. 862, 870 (Va.1878).

"[Fn. 22] Dean Wigmore has gloomily concluded that it is hopeless to attempt a reconciliation of precedents under various heads. Even if it were possible, results obtained would not reward labor spent. 2 J. Wigmore, Evidence § 302 (3d ed. 1940)."

Actually, what is really occurring in the broad perspective of the justice-delivery system is an ad-hoc disposition as an attitude of the particular appellate court. If we were not wise enough to recognize that the offense was less than as old as known society, we would conclude from the instant discovery and prosecution approach that society is disintegrating. Terrible it is, and terrible it will be—but new, these relational tragedies are not. Compare *Ex Parte Cofer*, supra; *Potts v. State*, supra, 500 S.2d 1318; *Soper v. State*, Alaska App., 731 P.2d 587 (1987); *Ali v. United States*, D.C.App., 520 A.2d 306 (1987); *State v. Scott*, supra, 347 S.E.2d 414; *State v. Mayfield*, 302 Ore. 631, 733 P.2d 438 (1987); *Commonwealth v. Evans*, supra, 494 A.2d 383. See informative discussion in the Colorado cases including requirement for carefully composed and seasonably afforded limits to instructions. *People v. Holder*, supra; *People v. Honey*, supra; *Stull v. People*, supra.

" * * * Indeed the instructions given here allowed the jury to consider the other transactions as evidence of defendant's propensity for engaging in such conduct and that he might therefore have committed the crime for which he was being tried. This is the very thing proscribed by *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959)." *People v. Holder*, supra, 687 P.2d at 463.

I recognize that my position cannot be reconciled with this court's decision in *Elliott v. State*, supra, 600 P.2d 1044. I disagree with the *Elliott* decision, and do not approve the court's construction of Rule 404(b) in that case. Although in some cases the principle of stare decisis might compel me to accept this court's earlier constructions of evidentiary rules, in this case I perceive that the *Elliott* decision renders the general rule excluding prior bad acts meaningless, at least as there applied in a result-directed sexual-assault case. Nowhere in Rule 404 do I find an exception for sexual-assault cases; nor do I feel justified in artificially creating such a differentiated standard as a perceived justification for more convenient conviction in this socially distressing class of criminally offensive conduct. If a rule of evidence is appropriate in a case, it should be appropriate as a general rule of evidence.

In result, this court's broad and undefined approach neither ascribes rules for admissibility of specific evidence nor provides parameters for conviction by proof of guilt rather than contended prior bad character. In approaching this nonoffense evidence, certain to be mentally invoked by the jury in the guilt determination, definable and understandable rules should be established operationally for the justice-delivery system as would suffice to provide reasonable reliability after criminal conviction that guilt did exist. See *Tharp v. State*, Ark.App., 724 S.W.2d 191 (1987).

## II

### Expert Testimony Introduced Concerning The Truthfulness of the Complaining Witness

In the now astronomically multiplied case discussions of expert witnesses in these sexual-assault cases, frequently involving minors, it is a well-settled rule of law that the expert witness may not testify to the truthfulness of the victim. *United States v. Azure*, 801 F.2d 336 (8th Cir.1986). This rule similarly has been recognized in this jurisdiction as absolute. *Lessard v. State*, Wyo., 719 P.2d 227 (1986); *Smith v. State*, Wyo., 564 P.2d 1194 (1977). Most recently, in *Azure*, the federal court comprehensively reviewed the philosophic and discretional premises of the clearly defined principle.

I differ from the court in its application of this accepted principle as related to the actual events of this case, created by the testimony of Dr. Mercedes Reisinger. Counsel for the prosecution obviously and succinctly indicated his purpose for introduction when in court conference he stated:

" * * * The issue is can an expert witness testify in a case that based on their experience, their observations, etc., etc., that a particular witness is telling the truth or not telling the truth about a certain event * * *. * * * The Supreme Court of the State of Wyoming has said that under 704, a witness may testify

concerning the ultimate issue in question."

The entire course of the testimony was to elicit expert opinion bolstering the credibility of the witness by test results denominated as truthful. *Lessard* and *Smith,* as well as the essential principles, should directly apply. Otherwise, in the language of Justice Frankfurter in another context, I would conclude:

" * * * Such an essay in linguistic refinement would still further embarrass existing intricacies. It might demonstrate verbal ingenuity, but it could hardly strengthen the rational foundations of law." *Helvering v. Hallock,* 309 U.S. 106, 117, 60 S.Ct. 444, 450, 84 L.Ed. 604, 125 A.L.R. 1368 (1940).

Unquestionably, the testimony was presented to give the expert's personal support to the complainant's statement of the facts implicating the defendant. Furthermore, counsel comprehensively and continually objected until the trial court's decision to admit the questioned evidence was final. The defendant's course of objections was clearly sufficient to preserve this court's review for error, and we need not concern ourselves with reviewing only for plain error.

The course of the interrogation of this witness reflected by the record first demonstrated a qualification as an expert witness on the subject of sexual molestation of children. Having set the stage, the State then inquired whether there is any particular pattern that occurs in sexual relationships. Objection was taken and overruled. Question as to the pattern of behavior was resisted and again overruled, after comment by the State:

"We are going to be using her testimony to corroborate the first witness' testimony. We believe that witness' testimony has been called in issue, where using Dr. Reisinger's testimony as corroborative and to bolster the credibility of the particular witness."

Following extensive testimony about the generic pattern, the witness was then asked about the characteristics associated with an incestuous father. Again, the defense objected and was overruled: "The court reserves a ruling under Rule 403." Impulse-controlled inquiry raised an objection under Rule 403, with a reservation and admission, including further extensive testimony not specifically related to this individual case. Then the witness was asked about a conclusion concerning a victim's reluctance to come forward. Objection was made and sustained as compound, and then rephrased as whether victims of an incestuous relationship tend to come forward eagerly. The defense again objected. The court specifically reserved a ruling under Rule 403, and permitted the witness to testify to the jury. Counsel inquired about taking the court's time, "Is the court going to grant me a continuing objection along 403?" to which the response was, "Nope." The inquiry continued, invoking the specific evaluation of the complaining witness, and by tender of a written report which was frequently discussed before the jury but never admitted into evidence. The testimony included discussion of certain tests taken by the alleged victim, which, according to the expert, showed that the alleged victim exhibited the characteristics of a victim of sexual molestation.

The expert was then asked, "Specifically, in your opinion, is Kathy the victim of sexual molestation?" The answer was, "Yes." Clearly, the court had previously covered the status of objection by advising counsel for the defendant that he was reserving under Rule 403 in admitting the evidence under Rules 703 and 705. Following testimony, counsel again in open court tendered the report, to which objection was again taken, with a ruling reserved. The witness was asked to tell what he had been told by Kathy about sexual molestation. Objection was taken, answers were elicited that the conversations were invited in the evaluation, and the court recessed for noon. In the colloquy that followed, we find:

"THE COURT: We are in chambers.

"You are on dangerous ground, Mr. Anderson [counsel for the prosecution]."

After considerable further discussion and recognition that the prosecution wanted to introduce a written report for the purpose

of communicating the opinion of the witness that Kathy Brown was telling the truth in regard to the particular incident of incestuous conduct, the court said:

"THE COURT: Now, let me make sure I understand what you just said to me.

"I understand that you have just said to me that you can bring on someone who you assert is an expert, an expert in some field, who will turn to the Jury and say, I am of the opinion that Mr. Brown is guilty.

"MR. ANDERSON: Yes."

After more discussion, wherein the court specifically rejected the right of the prosecution to secure testimony for the purposes stated, counsel for the prosecution said:

"With that in mind, Judge, the State will take a little different tack in its few remaining questions for the witness,"

with the response:

"Okay. Now, what the Court will let you do is we'll let you give scientific evidence. You can ask all of the darn specialized or scientific questions that you can dream up and this expert can share her knowledge with us. But the conclusions to be drawn from that knowledge are conclusions for the Jury, not for your witness.

"MR. ANDERSON: Yes, your Honor.

"THE COURT: Because we don't need that Jury. All we need is your witness and George's witness."

The court then acknowledged the propriety of introduction of scientific information about behavioral patterns, and stated:

" * * * I'm reserving a ruling on 403.

"MR. ANDERSON: Yes, Your Honor.

"THE COURT: And if you push it too far, then I sustain an objection under 403 and if I sustain an objection under 403, then I'm probably damn near compelled, unless I can find some slippery way out of it, to grant a motion for a mistrial. And all I want out of this is a fair trial. I want a fair trial for Mr. Brown; I want a fair trial for the State. I don't want any mistrials. I don't want unfairness and I don't want any prejudice. Okay.

"That's where we stand. You ought to know where you stand as well, Mr. Andrews.

"MR. ANDREWS: I appreciate that, your Honor."

Following this 25–minute conference in chambers, and the conclusion of the noon recess, the witness was recalled, re-emphasized his testimony as validating the characteristics of the Minnesota Multiphasic Personality test, and then was asked:

"Q. Did you review the M.M.P.I. results that were taken—the M.M.P.I. that—

"A. Yes.

"Q. —of Kathy Brown?

"A. Yes.

"Q. Were there any significant results from any of the three scales, the lie scale, the K scale or the F scale that you just talked about?

"A. They were all within normal limits.

"Q. Meaning what?

"A. Meaning that the individual approached the test from a very truthful fashion, not exaggerating or covering up."

This was not only plain error within the characteristics of the technical term as considered in appellate review in criminal cases, but plainly error in direct contravention of specific prior court rulings. Counsel had done exactly what he had said he wanted to do—secure expert testimony to vouch for the honesty of the complaining witness in relation to the specific events which were the focus of the criminal trial inquiry. Appellant was entitled to rely on objections made and the stated position of the trial court in response. *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986).

The jury may well have relied on the opinion of the so-called expert witness with asserted capacity to test "truthfulness" and surrendered their own common sense in weighing testimony. A like result is found in a current Colorado case. *People v. Koon*, Colo.App., 724 P.2d 1367 (1986), which held that the truthfulness testimony of the expert was plain error and required conviction reversal. A like result in a thoughtfully detailed review of the subject

is found from the Arizona court in *State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986), in concurrence with the *Azure* decision, supra. See *Ex Parte Anonymous,* Ala., 502 So.2d 1215 (1987); and *State v. Heath,* 316 N.C. 337, 341 S.E.2d 565 (1986).

### III

### *The Duffy Determinate Sentence*

The sentence afforded in this case is slightly less obnoxious than the one in *Duffy v. State,* Wyo., 730 P.2d 754 (1986), where a one-day differential for an indeterminate sentence was afforded, and we now have a one-month differential as involving a five-year maximum. For the same reasons stated in exhaustive detail in *Duffy,* I again dissent. The burden of the judiciary in maintenance of our system of government is adequately employed in recognizing its own responsibility and avoiding an effort to ignore legislative intent by invading the executive function in attempted extinction of parole responsibilities.

Restated legislative intent as now emplaced in Ch. 157, S.L. of Wyoming 1987, to be effective May 22, 1987, fortuitously limited *Duffy* to two people: Duffy, and now Walter Joe Brown. Remaining constitutional issues aside that may devolve from the efforts of the legislature to correct the mistakes of this court in *Duffy,* the present appellant should not be called to suffer for the super-legislative adventures of the judiciary and disregard of Art. 2 of the Wyoming Constitution. In this regard, as well as the other subjects discussed, I would reverse the decision of the trial court.

I respectfully dissent.

MACY, Justice, dissenting.

I dissent. This case has just struck the final death blow to Rule 404, W.R.E., and all that remains is the spirit of the rule.