## 59543. GARDNER v. LENON et al.

BIRDSONG, Judge.

Termination of parental rights. The facts show that the natural mother, Tommie Gardner, gave birth to the child in question in July, 1973, while an inmate in Alderson Federal Reformatory in Alderson, West Virginia. She was granted an emergency absence to place the child with a personal friend in Atlanta. This friend in turn placed the child, with the mother's consent, with a second couple, the Davises. When the marriage of the Davises began to disintegrate, the child was placed with a third couple (the Lenons), apparently without knowledge of the mother. In June, 1974, a determination of deprivation was made and the child was formally placed in the custody of the Davises. The facts show that Gardner was released from prison in March, 1975. From March, 1975 until August, 1976, the mother was in Atlanta but during that time, the child was in the custody of the Davises on the weekends and the Lenons during the week. In January, 1976, Gardner obtained visitation rights and either visited the boy in the Davis home or the boy was delivered to her apartment for several-hour visits. When Gardner kept the boy overly long on some of these visits, she was counseled by the juvenile court. Though the evidence is neither clear nor undisputed, it reasonably appears that after this counseling, Gardner did not visit with, see, or make significant inquiry about her son from sometime in 1976 until a petition for termination was filed in March, 1979, a period of over two years. While Gardner insists that she offered to help support her son financially, the evidence belies that offer to furnish financial support because she was not employed in a full time job until a few days before the hearing; and the custodial families denied that Gardner ever offered any financial support, although Gardner was never asked to furnish any support. Further, it appears that Gardner received vocational training in prison, but apparently did not utilize that training upon her release from the imprisonment. Her opportunities for gainful employment are further affected by the requirement that she be present daily in the methadone program she has been following ever since her return to Atlanta in a successful attempt to remain free of a heroin addiction, although she apparently is addicted to methadone. Both Gardner and her counselor in the methadone program conceded that Gardner emotionally was not ready to leave the program. Again though it is contested, there is evidence presented by a case worker that the six-year-old son enjoys visits to his mother, but is happier in his foster home. There was evidence that during recent visits pending the hearing, Gardner repeatedly informed her son that she was his

mother, that a named person was the cause of their separation and that they would soon be back together. The case worker indicated that this tended to confuse the six-year-old and caused emotional distress. Lastly, there is evidence that Gardner is nervous, has suffered a heart problem but otherwise appears to be in good health. The juvenile court found that visits to the mother have not profited the child emotionally; that Gardner has made no consistent, conscientious effort to support her son; concluded that the mother has shown a lack of concern and an inability or unwillingness to provide for the physical and emotional support of the boy. The court concluded on the basis of such evidence that the child was a deprived child; that the conditions of deprivation are likely to continue; and that the child probably will suffer irreparable physical and emotional harm. In view of those findings, the court terminated the parental rights of both the mother, Tommie Gardner and the unknown father. Gardner brings this appeal enumerating as error the findings by the trial court that the child was deprived; that the conditions of deprivation are likely to continue; and that by reason of such deprivation the child will suffer irreparable and emotional harm. *Held:*

As we view the issues in this case, we are confronted with a case in which the trial court was faced with conflicting evidence as to the interest and support shown by this mother to her son. Though Mrs. Gardner offered evidence that she had made efforts to continue contact with her son and was in a good position to support her child, there was contrary evidence that she had held no gainful employment for several years, had not contacted her son for over two years though she was proximally close to him, and had made no effort to contribute to his emotional or physical support. In spite of her protestations that she could provide for her son, there was evidence that she was physically and emotionally addicted to methadone, as well as suffering from some degree of physical infirmity. There was evidence that Mrs. Gardner treated her son to pleasurable activities and that he liked to visit her. Yet there was also evidence that following such visits, the boy was confused and stated that he preferred to be with his "mother and father" (the Lenons).

We are convinced that the juvenile court's primary responsibility is to consider the welfare of the child. As was said in the case of *In re Levi,* 131 Ga. App. 348 (206 SE2d 82) at p. 352: "A termination hearing seeks above all else the welfare of the child, with due regard for the rights of the natural and adoptive parents. . . After considering the interests of these parties, when the judge is faced with the final decision in [a] . . . termination case, he will ponder again the ancient question, 'Is it well with the child?' "

" 'The definition of "deprived child" focuses upon the need of the child *regardless of parental fault,' Brown v. Fulton County Dept. of Family &c. Services,* 136 Ga. App. 308, 309 (220 SE2d 790). In the instant case the inquiry at the deprivation hearing was not whether the parents, for their conduct, deserved to have their parental rights terminated. The question was whether the child '. . . is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals . . .' Code Ann. § 24A-401(h). . . . As to the contention that there must be an explicit finding that the parents are 'unfit,' we find no such requirement under present Code Ann. § 24A-3201 (a) . . . and we refuse to impose such a requirement." *Cox v. Dept. of Human Resources,* 148 Ga. App. 43, 46-47 (250 SE2d 839).

The court in arriving at its decision in terminating parental rights should use, among other criteria, moral unfitness, physical abuse, and abandonment by a parent. These criteria, among others, are manifestations which should be used in arriving at the question as to whether a child is a "deprived child" within the meaning of Code § 24A-401 (h).

The facts of this case fully support the conclusion of the trial court that Johnice Gardner has been from the time of his birth, continues to be, and probably will continue to be without proper parental care, control, and subsistence, that degree of care and control necessary for his physical, mental or emotional health, or morals. Code Ann. § 24A-401 (h). The determination of deprivation and the decision to terminate parental rights based thereon is an exercise of discretion by the trial court and if based upon evidence and consistent with the law, will not be controlled by this court. *Roberts v. State of Ga.,* 141 Ga. App. 268, 270 (233 SE2d 224) and cits.

*Judgment affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED MARCH 5, 1980 — DECIDED
MAY 28, 1980.

*Eloise W. Newhard,* for appellant.
*Sharman M. Meade,* for appellees.