66214. IN RE M. M. A.

DEEN, Presiding Judge.

Appellant, the father of the child who is the subject of this appeal, was awarded permanent custody of his daughter, then less than a year old, in an uncontested divorce action in July 1977. She has since lived with him except for periods when he was out of town, primarily for business reasons, during which times she would ordinarily stay with appellant's invalid mother and his stepfather, a licensed practical nurse. After the divorce, appellant's former wife, appellee here, had several sexual liaisons, bore two illegitimate children, lived in a number of different places, and was hospitalized more than once for alcoholism and emotional illness.

Approximately one year before the commencement of the action below, appellee remarried and, according to her brother's wife, "settled down." Appellant has lived at several addresses in the Crisp-Worth-Sumter County area, moving about in the area for job reasons, and is now apparently happily married to a third wife. The present wife testified at trial that he is a good husband and father to her small child as well as his own, and that he no longer uses alcohol and other drugs, as he had done in the past. There was other testimony that appellant enjoys a good reputation in the community and that, from his wages and the proceeds of a trust established by his deceased father, he is well able financially to support a family.

Appellee had made little effort to exercise her visitation rights

since the divorce but had visited the child twice during times when she was left in the care of appellant's stepfather. In May or June of 1982 she got in touch with the stepfather to inquire regarding appellant's current address. The stepfather testified that he had provided both address and telephone number and had further informed appellee that appellant was listed in the local telephone directory. Appellee admittedly made no effort to reach appellant, however.

In July 1982 appellant went to Florida for eight or nine days to attend a family funeral and to visit his mother, who had been divorced from the stepfather and was living with a daughter. During this time the child stayed with the stepfather, and appellant telephoned nightly to inquire after his daughter and to tell the stepfather where he could be reached. Appellee telephoned the stepfather to ask about appellant's whereabouts and was informed that he was in Florida. She thereupon filed a petition for temporary custody of the child, alleging that the latter had been abandoned and was in need of proper care and control, and that it would be in the best interest of the child if temporary custody were awarded to her. In an amended petition appellee alleged further that appellant was an unfit parent and that there had occurred a material change of condition (her own remarriage) which justified a change of custody. Appellee received temporary custody, and after an August 1982 hearing, the Worth County Superior Court found both parents unfit, determined that the child was deprived, and awarded temporary custody to the Department of Human Resources through the Worth County Department of Family and Children's Services (DFCS). This action was originally filed in the Worth County Juvenile Court, but at trial the court noted the overlapping jurisdiction, and the order appealed from here was signed by the trial judge in his capacity as judge of the Worth County Superior Court.

On appeal the father enumerates eleven errors. One of these concerns the court's basing its decision in part on evidence outside the record of an instance of an alleged failure to provide needed dental care. Another enumeration challenges the court's denying counsel an opportunity to examine DFCS records which each side had submitted and which the court had examined in camera. The remaining enumerations challenge the court's action in basing its finding of unfitness on past rather than present conduct and on other allegedly incompetent and insufficient evidence, and in taking custody from the father and giving it to a third party, the DFCS. *Held:*

1. Appellant's enumerations raise issues of the gravest concern, centering as they do upon the parent-child relationship and upon the

conditions and circumstances under which the state may make bold to interfere with that relationship. For convenience of discussion, we have grouped related enumerations rather than dealing with them *seriatim.*

When contemplating taking custody of a minor child from his parent or parents and awarding it to a third party, the court must initially face the presumption, firmly embedded in our law, that it is in the child's best interest to be with his natural parent or parents. *Childs v. Childs,* 237 Ga. 177 (227 SE2d 49) (1976); *Larson v. Gambrell,* 157 Ga. App. 193 (276 SE2d 686) (1981). In order for this presumption to be overcome, there must be a clear and convincing showing that the child is abandoned, deprived, or abused, or that the parent is unfit to receive or retain custody. *Mathis v. Nicholson,* 244 Ga. 106 (259 SE2d 55) (1979); *Bowman v. Bowman,* 234 Ga. 348 (216 SE2d 103) (1975); *Larson v. Gambrell,* supra. Thus, in order to take custody from the natural parent or parents and award it to a third party, the court must consider not simply the "best interest of the child," which is the appropriate standard when the contest is between the parents, *Carvalho v. Lewis,* 247 Ga. 94 (274 SE2d 471) (1981), but the narrower criterion of parental fitness to have the child in his or her custody. *Chancey v. DHR,* 156 Ga. App. 338 (274 SE2d 728) (1980); *Childs v. Childs,* supra. Proof of parental unfitness must be clear and convincing. Id.; *White v. Bryan,* 236 Ga. 349 (223 SE2d 710) (1976); *Larson v. Gambrell,* supra. Evidence adduced to achieve this standard of proof must pertain to present rather than past misconduct. *Bozeman v. Williams,* 248 Ga. 606 (285 SE2d 9) (1981); *Shaddrix v. Womack,* 231 Ga. 628 (203 SE2d 225) (1974).

In her petition for temporary custody, filed July 23, 1983, appellee alleged that the appellant father's whereabouts was unknown and that "after a diligent search" she "was unable to locate him and believes him to reside outside the state of Georgia." She further alleged that "[o]n or about July 20, 1982, the father . . . left the child with [his stepfather and] . . . has failed to return to pick up the child"; that "the environment in which the child is presently residing is contrary to the best interest and welfare of the child"; and that "[t]he said child is in need of proper care, custody, and control." On the same day the petition was filed, the Worth County Juvenile Court entered an order finding that "the conditions and surroundings of the child are endangering . . . her health and welfare" and directing the sheriff to "take said child into his protective custody instanter" and deliver her to her mother. The record does not disclose on what evidence this order was based. After a hearing on appellee's petitions for both temporary and permanent custody held August 26, 1982, the superior court found that the child was deprived and that both

parents were unfit, and awarded custody to the DFCS.

A parent may lose his right to custody of his child or children if he is found to be unfit or if there is found to exist one of the conditions specified in OCGA § 19-7-1 (Code Ann. § 74-108); namely, voluntarily contracting to release the child to a third person; consenting to the child's adoption; failing to provide necessaries for the child or abandoning him; cruel treatment; or consenting to the child's marrying or receiving the proceeds of his own labor. *Bowman v. Bowman,* supra; *Morris v. Grant,* 196 Ga. 692 (27 SE2d 295) (1943). Custody may also be lost if the child is found to be destitute or suffering, if he is being reared under immoral influences, or if he is found to be deprived and likely to be harmed thereby. OCGA §§ 15-11-34, 15-11-51, 19-7-4 (Code Ann. §§ 24A-2301; 24A-3201; 74-109, 74-110); *Byers v. Loftis,* 208 Ga. 398 (67 SE2d 118) (1951). See also *Gardner v. Lenon,* 154 Ga. App. 748 (270 SE2d 36) (1980); *Patty v. DHR,* 154 Ga. App. 455 (269 SE2d 30) (1980).

The record is devoid of evidence that any of the conditions enumerated in the statutes exists in the instant case, or that the child was destitute, suffering, or subject to adverse influences. At the August hearing which resulted in the superior court's awarding custody to the DFCS, evidence was presented which showed that, whether the appellant father was at home or away on a job, the child was regularly cared for either by appellant's wife or by his stepfather. Appellee testified that the child had twice in her presence indicated a desire not to see the stepfather, and during the examination of another witness, an intimation was elicited that the stepfather might have sexually molested the child. There was no testimony or other evidence corroborative of either of these allegations, however. Photographs offered in evidence showed that the various quarters in which the child had lived (including those of the stepfather), while by no means elegant, were clean and orderly and offered adequate facilities for her physical and emotional nurture. Testimony offered by appellant's present wife and other witnesses indicated that the child had always received adequate supervision and emotional support. The wife testified that she and appellant had started taking the child to church, and that it was her desire "to get [the child] involved in the church." The stepfather testified that he loved the child as his own, and that she returned his affection. There was also testimony that not only with respect to the July trip to Florida but at all times in the past, when he was to be away from home, appellant had made suitable arrangements, either with his stepfather or with some other competent adult, for the child's safekeeping. There was also evidence that appellant had paid the stepfather at least $2,500 to care for the child on various occasions. Other than the appellee's

allegations there is nothing in the record that would support a finding that the child was abandoned, destitute, deprived, or subject to immoral influence, or that the custodial parent, appellant here, had failed to provide the necessaries for his daughter. See *Hale v. Henderson,* 210 Ga. 273 (79 SE2d 804) (1954); *Brown v. Newsome,* 192 Ga. 43 (14 SE2d 470) (1941).

The evidence of record in the instant case likewise falls far short of meeting the "clear and convincing" standard of proof of present parental unfitness. The evidence of drug and alcohol abuse, sexual irregularities, and other questionable conduct alleged against one or both parents deals altogether with conduct that occurred in the past. On the other hand, there was evidence of rehabilitation; that is, that both parents have amended their lifestyles and are now so situated with respect to living arrangements and finances as to be able to care adequately for the child. The mere possibility that a child may receive superior influences or amenities in third-party custody is insufficient to justify taking him from his natural parents. *Shover v. DHR,* 155 Ga. App. 38 (270 SE2d 462) (1980). So important have our courts regarded the bond between parent and child that they have declined to sever it in instances of parental conduct far more egregious than that of either parent here, and particularly of appellant father, even if evidence of past drug and alcohol abuse and other irregularities of conduct is given its full weight. Compare the following cases in which this court has held termination of parental rights unjustified: *Harper v. DHR,* 159 Ga. App. 758 (285 SE2d 220) (1981) (father in prison, mother high school drop-out not regularly employed, no running water); *Chancey v. DHR,* supra (parents unemployed and immature, neither has supplied financial aid for child in foster care); *Ray v. DHR,* 155 Ga. App. 81 (270 SE2d 303 (1980) (single mother offers no financial support and shows no interest in child who is in DHR custody).

"There can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring. To terminate that right ... [is appropriate] only under the most carefully controlled and regulated circumstances for the sake of the child. There must be compelling facts to establish the necessary lack of 'proper parental care or control' justifying the government's intrusion in cutting natural family ties." *Nix v. DHR,* 236 Ga. 794, 795 (225 SE2d 306) (1976). See also *Carvalho v. Lewis,* supra. To sever parental ties absent such "compelling facts" would be tantamount to child abuse.

"The law contemplates that one of the natural parents will be awarded custody of the child unless the present unfitness of the parents is established by clear and convincing evidence at the hearing

on permanent custody. Only then is the trial court authorized to consider an award of custody to third parties." *Childs v. Childs,* supra at 178.

When the trial court makes a finding of parental unfitness, the appellate courts will ordinarily not interfere with that finding, absent abuse of discretion. *Adams v. Kirkland,* 218 Ga. 512 (128 SE2d 730) (1962). In the instant case, however, the evidence of record will not sustain a finding of present parental unfitness. We conclude that the trial court abused its discretion in taking custody of the child from her parents and awarding it to the DFCS.

2. Appellant's further contention that the trial court's denial of access to the DFCS records abrogated his constitutional right to cross-examination is relevant to our determination, supra, that the court below abused its discretion. The right to face one's accuser and to know the nature of his evidence against one is so fundamental to our system of justice as to require no elaboration here. Suffice it to say that the court erred in denying the parents access to the files. If they contained matter that should have remained confidential because it concerned appellee's two illegitimate children or other innocent parties, it would have been a relatively simple matter for the court to remove this matter temporarily from the files or to have copies of the file prepared from which the privileged material had been deleted. Compare *Ray v. DHR,* supra.

In a contest between the parents, the award of custody by a divorce court vests the custodial parent with a *prima facie* right. *Hill v. Rivers,* 200 Ga. 354 (37 SE2d 386) (1946). Ordinarily, the trial court should favor the parent having such a right. *Triplett v. Elder,* 234 Ga. 243 (215 SE2d 247) (1975). The evidence in the instant case does not show that the father's *prima facie* right to custody has been forfeited under OCGA §§ 15-11-34, 15-11-51, or 19-7-4 (Code Ann. §§ 24A-2301, 24A-3201, or §§ 74-109, 74-110), or through some other means which our law recognizes. See, e.g., *Dearman v. Rhoden,* 235 Ga. 457 (219 SE2d 704) (1975). What the court must affirmatively find is either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. *Bell v. Bell,* 154 Ga. App. 290 (267 SE2d 894) (1980). It is a change for the worse in the conditions of the child's present home environment rather than any purported change for the better in the environment of the non-custodial parent that the law contemplates under this theory. *Dearman v. Rhoden,* supra; *Bowen v. Bowen,* 223 Ga. 800 (158 SE2d 233) (1967). While we can appreciate the trial court's perception that the father's lifestyle has not always been exemplary, we cannot agree that the child is deprived

or that the father has shown himself to be unconcerned for her welfare. Appellee mother has not made the requisite showing of "change of condition" such as to justify awarding custody to her.

We hold that the court below erred in taking the child from an environment in which there is no competent evidence that she was otherwise than healthy, happy, and adequately cared for, and placing her in the custody of the DFCS. The evidence presented is insufficient to rebut either the presumption favoring the natural parents over a third party, or that favoring the parent having a *prima facie* right as attested by a divorce decree. The judgment in this case, therefore, must be reversed.

*Judgment reversed. Banke, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED APRIL 27, 1983 —
REHEARING DENIED MAY 13, 1983 — ▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*John R. Rogers,* for appellant.
*Ralph F. Simpson,* for appellee.