### 71752. WATSON v. THE STATE.
(348 SE2d 557)

BEASLEY, Judge.

Appellant was found guilty of aggravated assault with intent to rape. The victim identified appellant as the young man whom she permitted to enter her home to telephone for aid for his disabled car. After ascertaining she was alone in the house, the assailant chased the victim out onto a porch where he hit her in the face, knocking her to the ground. He attempted to pull her back into the house, tried to remove her shorts, and beat her head on the porch floor before he gave up his efforts and ran away.

1. On rebuttal, the State called a witness who testified she had received telephone calls from appellant seeking a date earlier that summer. When she learned his age, she tried to discourage him, after which she started receiving sexually suggestive phone calls from an

unidentified man whose voice she recognized as that of appellant. The rebuttal witness stated that appellant called sometime in August, identified himself, and asked if he could visit her. Although she responded negatively, several minutes later a person knocked on her door, seeking directions and a glass of water. The woman recognized the voice as being appellant's and refused the visitor entry. The trial court admitted the testimony as evidence of a similar transaction, over appellant's objection.

Generally, evidence of criminal acts by the defendant is irrelevant and inadmissible because it tends to place the defendant's character in evidence. OCGA § 24-2-2. However, evidence of independent offenses is admissible if it is shown that the defendant was, in fact, the perpetrator of the independent offense and there is a "sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. [Cit.] . . . The *only* separate crimes which are admissible are those that are either similar *or* logically connected to the crime for which defendant is being tried. Crimes which are not similar or which are not logically connected to the crime for which defendant is being tried should be excluded from evidence." *State v. Johnson*, 246 Ga. 654 (1) (272 SE2d 321) (1980).

The defendant's behavior towards the rebuttal witness was relevant to the issues on trial and not unduly prejudicial. The witness described the telephone calls she had received from defendant over a period of time and his aborted visit the same month as the crime on trial. That incident was not a prior "crime" but rather evidence of defendant's bent of mind or disposition. It tended to show that as well as motive, intent, plan, identity and/or course of conduct. Even evidence of prior *crime* is admissible to show these factors. *Sport v. State*, 253 Ga. 689 (1) (324 SE2d 184) (1985).

The foundation that must be laid by the state includes identity in the prior instance and a sufficient similarity of instances. *Sport*, supra. Identity was in issue because defendant denied that he was the person who made the phone calls or attempted to visit the witness, although he admitted having seen her around. The witness positively identified him as the person who called, having recognized his voice when he visited and at trial, and having recognized him by appearance, having seen him at her home and, about half an hour before the assault being tried, in a parking lot a mile or two from the victim's house. This was sufficient identification to lay the first portion of the foundation, for " 'the standard of proof of reasonable doubt is not applicable to the proof that the defendant was the perpetrator of the independent crimes, . . .' " *Thomas v. State*, 176 Ga. App. 53, 54 (1) (335 SE2d 135) (1985).

The second prerequisite, similarity, is rather striking, keeping in

mind that both visits occurred in August of 1984. Both involved the same following factors: uninvited visits to the homes of women older than defendant, which women were known to defendant but not very closely (the victim in the case on trial had seen him a number of times in the store where she worked); plausible, innocent reasons given in an effort to gain permitted entry into the homes; loss of courage and abandonment of efforts and retreat from the premises when the women resisted; a foisted sexual desire exhibited.

We find no error in this regard. When the facts of the other instance " 'are sufficiently similar or connected to the facts of the crime charged,' " the other is admissible " 'to prove identity, motive, plan, scheme, bent of mind, or course of conduct.' " *Hill v. State*, 176 Ga. App. 509, 510 (1) (336 SE2d 276) (1985); *Perry v. State*, 158 Ga. App. 349, 352 (2) (280 SE2d 390) (1981). Compare *Hunter v. State*, 177 Ga. App. 326 (339 SE2d 381) (1985).

2. The defenses of alibi and mistaken identity were presented. Then, in connection with closing argument, the state objected to defense counsel's plan to comment on specific cases of mistaken identity which he personally knew about from his experience or had read about, presumably from newspaper articles. The court limited the argument to experiences common to everyone but disallowed instances requiring a recitation of facts not in evidence which concerned cases not of common knowledge. Counsel pursued the matter outside the presence of the jury, and a discussion of Daniel, Ga. Crim. Trial Prac., (pre-1984 ed.), § 23-5, ensued. The court also took into account the American Bar Association Standards concerning The Defense Function in argument to the jury, § 4-7.9 (1982). Its ruling remained steadfast, limiting argument on facts outside the record to matters of common public knowledge.

Having considered counsel's stated intention and the basis for the court's ruling, we find no error.

*Evidence* of the specific cases counsel wished to talk about would have been totally irrelevant if offered during the trial because they were not related to this case. Nor were they "well-established historical facts," facts which were matters of common public knowledge. Instead, they were cases about which the facts may well have been in dispute.

It is true that "the right of 'open and far-ranging argument' . . . belongs to both parties — defendants also have the right to argue . . . ," as recently reacknowledged by the Supreme Court in *Walker v. State*, 254 Ga. 149, 159 (327 SE2d 475) (1985). Yet the right is circumscribed. OCGA § 17-8-75 prohibits counsel, in the hearing of the jury, from making "statements of prejudicial matters which are not in evidence."

3. The charges given to the jury after it began deliberations were

correct. The final enumeration, relating to newly discovered evidence, does not require a new trial.

   *Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Pope, JJ., concur. Deen, P. J., also concurs specially. Benham, J., dissents.*

   DEEN, Presiding Judge, concurring specially.

   While concurring fully with the majority opinion, I also concur specially to make the following observations.

   1. Concerning the contention that the trial court erred in disallowing the appellant's counsel during closing argument to highlight the facts of certain celebrated and historical cases reported in the news media, it should be noted that "[a]mple opportunity for full argument is certainly an important right to the parties, and if denied on the main trial of a case, civil or criminal, the denial would furnish sufficient reason, generally, for a new trial. . . . In that stage of litigation, even where the merits are clearly against the losing party, he should have such mental satisfaction as he could derive from having finished his speech. He should not be slaughtered with his address warm in his bosom, alive and undelivered. His case being finally and forever lost, with his argument unheard, he would feel perhaps, and sometimes justly feel, that the outrage of deciding without hearing him was greater, far greater, than the calamity of the adverse decision itself. He might get justice, but with it a wound from the court more painful than any justice which the court could administer; for it is not impossible that a suppressed speech may occasion more mental torture than a lost case." *Early & Lane v. Oliver & Norton*, 63 Ga. 12, 18-19 (1879).[1]

   Nevertheless, the curtailment of closing argument still remains within the discretion of the trial court. For example, in *Jordan v. State*, 172 Ga. App. 496 (2) (323 SE2d 657) (1984), this court held that the trial court did not abuse its discretion in allowing the prosecutor to refer to some "Gracy fellow" case in Chicago. Similarly, the trial court's disallowance of such an argument in this case was no abuse of the broad discretion possessed by the trial court. In any

---

[1] These, of course, are the words of the legendary Justice Logan E. Bleckley, whose bust appears in the rotunda of our State Judicial Building. Bleckley was perhaps Georgia's most remarkable jurist, both physically and mentally. Standing six feet five inches tall, he had a long grey beard and almost shoulder-length hair; following his retirement from the bench, on one occasion he travelled to New York City to advise a conference of New York lawyers, who later exclaimed that he looked like Santa Claus but talked like Blackstone. See Grice, "The Tallest of Them All," *Georgia State Bar Journal*, 39, 53 (August 1967). He lived to be almost 80 years old; at the age of 66 he remarried, with five children resulting from this marriage. (Five children were born of his first marriage as well.) He discharged his judicial duty with admirable fortitude, on occasion presiding in court while stretched out in pain on a cot, owing to a bad back. See Memorial of Honorable Logan E. Bleckley, 128 Ga. 849-864 (1907).

event, any error in the disallowance of the argument in this case surely would have to be classified harmless, as the evidence was overwhelming that the victim was chased, knocked to the ground, had her head beaten on the porch, and was sexually assaulted by the appellant.

2. The trial court also correctly admitted the evidence of similar acts attributed to the appellant to show his bent of mind, identity, intent, etc. The various acts of (1) making sexually suggestive phone calls, such as "hear my voice where he gets his balls off for the night," (2) asking for a date, and (3) making a personal visit during which one asks for directions, a glass of water, and then attempts to get inside the house, are sufficiently similar to one's seeking permission to use the telephone and then proceeding to make a sexual assault on the victim when he determined that she was alone.

BENHAM, Judge, dissenting.

The majority correctly states the law on the admission of similar acts but then fails to apply it to the case at bar.

In order for evidence of an independent offense to be admitted, there must be a "sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. [Cit.] . . . The *only* separate crimes which are admissible are those that are either similar *or* logically connected to the crime for which defendant is being tried. Crimes which are not similar or which are not logically connected to the crime for which defendant is being tried should be excluded from evidence." *State v. Johnson*, 246 Ga. 654 (1) (272 SE2d 321) (1980).

I agree with the majority's position that it was proper to admit the rebuttal witness' recitation of the method appellant used in an attempt to gain entry to her home since it was similar to the means used to gain entry into the victim's home. However, the question not addressed by the majority in the case at bar is whether the act of making suggestive telephone calls to a woman is sufficiently similar or connected to the attempted rape of another woman so that proof of the former tends to prove the latter. The State suggests the two acts are "logically connected" because each involved "sexual overtones." See *Jessen v. State*, 234 Ga. 791 (3) (218 SE2d 52) (1975). While exceptions to the general rule of inadmissibility "have been liberally extended in cases of sexual crimes" (*Perry v. State*, 158 Ga. App. 349 (2) (280 SE2d 390) (1981)), there must be more to connect the two dissimilar acts than their sexual nature inasmuch as that connection alone is not sufficient to show motive and bent of mind. *Walraven v. State*, 250 Ga. 401 (4b) (297 SE2d 278) (1982). I am of the opinion that the admission of the rebuttal testimony concerning the telephone calls was reversible error.

I also disagree with the majority's conclusion that the trial court did not err when it limited the closing argument of appellant's counsel. "These comments were not an attempt to bring in facts not in evidence, but to suggest to the jury that [innocent persons are, at times, wrongfully convicted on the basis of erroneous eyewitness identification] . . . We find the argument of which complaint is made well within permissible bounds. The [defense attorney] simply [attempted to argue] the evidence and reasonable inferences arising therefrom. . . ." *Jordan v. State*, 172 Ga. App. 496 (2) (323 SE2d 657) (1984). What is sauce for the goose in *Jordan* should be sauce for the gander in the case at bar. I believe it was error to limit defense counsel's closing argument.

DECIDED JULY 15, 1986 —
REHEARING DENIED JULY 31, 1986 ▬▬▬▬▬

*Wade M. Crumbley*, for appellant.
*E. Byron Smith, District Attorney, Thomas K. Floyd, Assistant District Attorney*, for appellee.