77707. IN THE INTEREST OF B. H.
(378 SE2d 175)

SOGNIER, Judge.

The Georgia Department of Human Resources, acting through the local Department of Family and Children's Services (DFCS), filed a petition in the Juvenile Court of Jones County seeking temporary custody of B. H., alleging that the father had sexually abused the child, who was therefore a deprived child within the contemplation of OCGA § 15-11-2 (8). The juvenile court granted temporary custody to DFCS, and both parents bring this appeal.

The record reveals that at the hearing, Sheila Coleman, director of the day care center attended by B. H., testified that B. H., a two-and-one-half-year-old girl, described how her father had sexually molested her with his teeth and tongue. Shirley Hutchings, a caseworker with Jones County DFCS, testified that she spoke with B. H. at the day care center and B. H. repeated her allegation. Hutchings testified that B. H. told her her father had hurt her that way more than once, and that although Hutchings had asked her if anyone else had done this to her, B. H. insisted that only her father had done so. Hutchings stated that she confronted the mother with the child's allegation, and

the mother refused to believe that the father had molested the child. The father denied it, and the child thereafter would not repeat her allegations. Hutchings testified that she firmly believed the father had molested the child, and consequently could not allow the child to remain in the parental home unless the mother would give some indication that she believed the abuse occurred and agree to protect the child by removing the father from the home. The mother refused to do so, and the child was therefore placed with the maternal grandmother, where she remains.

In a psychological evaluation of B. H. by Dr. Donald Meck, which was read into the record by counsel for the parents, Dr. Meck stated that he could not get B. H. to talk about the alleged abuse, but that he administered the Sex Abuse Legitimacy Scale, which suggested that B. H.'s allegation had been somewhat fabricated.

DFCS then made an offer of proof consisting of the testimony of Diane Millions, a fourteen-year-old girl who allegedly had been raped by B. H.'s father. The court found this to be similar to the alleged act of abuse of B. H., and admitted the testimony over objection. Millions testified that her mother worked for an ambulance service in Wilkinson County for which B. H.'s father also worked. She testified that B. H.'s father, after offering to take her home, turned the car off the road onto an isolated dirt road where he forced her to perform sodomy on him and raped her.

The father denied he had raped Millions, but admitted he had been suspended from his job as an EMT and had been charged in Wilkinson County in relation to Millions' allegation. The parents both denied any wrongdoing as to B. H., and Wayne Avery, the father's uncle and a Macon Police Detective, testified that he had been at the home of the parents often, and had never seen any sign of deviant conduct on the part of the father. The parents made an offer of proof of testimony from the grandparents that the parents are of good character and that the father had never behaved inappropriately toward B. H. in their presence, which the court accepted as proven. Accepted as well was the fact that B. H. loved her father and wanted to go home.

The trial court found that B. H. was deprived, gave temporary custody to DFCS subject to the requirement that it report to the court in eight months, and found that it was in B. H.'s best interest that placement remain with the maternal grandmother.

1. Appellants first enumerate the general grounds, specifically contending there was no evidence on which the trial court could base an order depriving the mother of custody. We do not agree. The trial court found that there was "clear and convincing evidence that [the father] sexually abused [B. H.] as alleged in the petition," that it would be contrary to the welfare of the child for her to be in the

parental home, and that "reasonable efforts have been made to prevent or eliminate the need for removal and to make it possible for the child to return home." Thus, the reason the mother was deprived of custody was her refusal to protect the child by even considering the possibility that the father could have abused the child and her consequent unwillingness to remove the child from the danger presented by living with the father. The juvenile court's primary responsibility is to consider and protect the welfare of children whose well-being is threatened. OCGA § 15-11-1 (1). This is so regardless of specific fault on the part of the mother. See generally *Gardner v. Lenon*, 154 Ga. App. 748, 749-750 (270 SE2d 36) (1980). Accordingly, in this instance, after finding there was clear and convincing evidence the father had molested B. H., the trial court did not abuse its discretion by considering the evidence and deciding it had no choice but to protect the child by removing custody from the mother as well. See generally *In re D. C.*, 176 Ga. App. 30 (335 SE2d 148) (1985).

2. Appellants next contend the trial court erred by admitting the hearsay testimony of Coleman and Hutchings about what B. H. told them, because it had no probative value and because B. H., although present, was not called by the court for a determination of her competency. We find no merit in this contention. OCGA § 24-3-16 provides that "[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." By its terms, this statute allows the burden of proof to be satisfied under certain circumstances "by introducing the alleged victim's hearsay declarations without putting the victim on the stand." *Sosebee v. State*, 257 Ga. 298, 299 (357 SE2d 562) (1987). Thus, the hearsay was properly admitted provided the circumstances met the statutory criteria.

We find that the circumstances met those criteria. First, the statements made by B. H. to Coleman and Hutchings were clearly of the kind contemplated by the statute. Second, the court is required to have the victim testify only "at the request of either party," id., and it is uncontroverted that although B. H. was available to testify, no request was made by either DFCS or appellants that she do so. Finally, there was evidence that it would be difficult for a child that age to fabricate such a story, and thus we cannot say the trial court erred by finding sufficient indicia of reliability. Accordingly, the trial court did not err by admitting the hearsay testimony of Coleman and Hutchings.

3. We find no merit in appellants' assertion that the trial court erred by allowing Coleman to give the opinion that it would be diffi-

cult for a child the age of B. H. to make up a story about sexual abuse when Coleman had not been qualified as an expert. " 'Nothing more is required to entitle one to give testimony as an expert than that he [or she] has been educated in the particular trade or profession, although the special knowledge required to qualify as an expert may be derived from experience as well as study. [Cits.] . . .' [Cit.]" *Patterson v. Lanham,* 182 Ga. App. 343, 344-345 (2) (355 SE2d 738) (1987). Coleman testified that she had an Associate's degree from Macon Tech, that she had participated in an internship program, and that she had worked for a day care center for three or four years. She stated she had been around other children and that she knew "the stages that they go through" and "what things are normal and what's not normal." We find no error in the trial court's allowing Coleman to base her opinion on that foundation.

4. The record does not support appellants' contention that the trial court erred by failing properly to consider the report of Dr. Meck. In its order, the trial court briefly summarized the report but also stated that it had reviewed the deposition of Dr. Meck, and that "[t]he validity of the tests administered [by Dr. Meck] to both parent and child [had been] eroded as [Dr. Meck] was made aware of the surrounding facts." The trial court reasoned that Dr. Meck "was operating on, I think, one level of knowledge and, hopefully, I'm operating on a little higher level of knowledge. I had the benefit of testimony by other people. [I h]ad the benefit of seeing the people who did actually testify in this case and applying my own view as to whether or not they were telling the truth, simply by their demeanor and the content of what they said; how they said it." It is thus obvious that the trial court did give thoughtful consideration to Dr. Meck's report, but nevertheless found clear and convincing evidence that B. H. had been abused by her father.

5. Appellants maintain the trial court erred by allowing into evidence testimony regarding other alleged sexual misconduct by the father. "The general rule is that . . . evidence which in any manner shows or tends to show that the accused has committed other criminal acts is irrelevant and inadmissible as it tends to place the accused's character into evidence. [Cits.] However, there are exceptions to the 'other crimes' rule where there is sufficient logical connection between the independent crime and the offense charged so that it can be said that proof of the former tends to prove the latter. [Cits.] These exceptions to the general rule 'have been liberally extended in cases of sexual crimes. [Cit.]' [Cits.]" *Perry v. State,* 158 Ga. App. 349, 352 (280 SE2d 390) (1981). Since that is true in criminal trials, where the rights of the accused are carefully protected, it is more logically so in a deprivation proceeding, where the paramount consideration is the welfare of the child. See generally OCGA § 15-11-1 (1). In

this case, we cannot say that the trial court erred by determining that the fact that the father was awaiting trial on a charge accusing him of a sexual offense against an underage girl was sufficiently similar to the alleged abuse of his own daughter as to have some bearing on the instant case, at least as to the father's bent of mind or course of conduct. See generally *Watson v. State*, 180 Ga. App. 82, 84 (1) (348 SE2d 557) (1986).

6. Appellants finally contend the trial court erred by allowing DFCS to attempt to discredit Dr. Meck's report, since Dr. Meck was chosen by DFCS and was, therefore, its own witness. We find no merit in this contention because DFCS did not voluntarily introduce the report, and thus appellants' reliance on OCGA § 24-9-81, which provides that a party may not impeach a witness voluntarily called by him, is misplaced here.

*Judgment affirmed. Deen, P. J., concurs. Carley, C. J., concurs in the judgment only.*

DECIDED JANUARY 31, 1989.

*Arthur L. Phillips*, for appellant.
*Philip B. Spivey, Michael J. Bowers, Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General*, for appellee.