A05A0115, A05A0116. IN THE INTEREST OF T. J., a child
(two cases).
(615 SE2d 613)

ADAMS, Judge.

In two separate appeals, the mother and putative father of an infant appeal a juvenile court's determination that their child is deprived. They contend the evidence was insufficient to support the findings. We disagree and affirm.

"On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's

judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived." (Punctuation and footnote omitted.) *In the Interest of M. L. C.*, 249 Ga. App. 435, 436 (2) (548 SE2d 137) (2001). We neither weigh evidence nor determine the credibility of witnesses. *In the Interest of C. C.*, 249 Ga. App. 101 (547 SE2d 738) (2001).

Construed in favor of the judgment, the facts show that before he was four months old, T. J. experienced multiple fractures all over his body, including multiple rib fractures, clavicle fractures and skull fractures; he also had multiple subdural hematomas. The various fractures and hematomas showed evidence of old and new healing, which, according to expert testimony, indicated that they occurred at different times. The child did not exhibit signs of any condition or disease that would predispose him to bone fractures.

Dr. Terese DeGrandi, a pediatric emergency medicine physician and the medical director for the Center for Advocacy and Protection at the Children's Center of Atlanta, was admitted as an expert in child abuse. Dr. DeGrandi examined the child and testified that the child's injuries were consistent with abusive nonaccidental trauma. The skull fractures indicated that the child had been slammed on one side of the head then the other, or there were two separate incidents in a short time frame. Dr. Kimberly Spencer, a radiologist who assessed the child's x-rays, opined that the injuries were "highly likely child abuse[,] . . . especially considering the multiplicity of the findings, the posterior rib fractures, as well as the various states of the healing fractures." She also opined that the injuries could not have been the result of an accident; they evidenced intentional injury.

The investigator for the Department of Family and Children Services testified that in his experience, there are dangers of repeated abuse and death when a child is sent back into a home in which serious unexplained injuries have occurred.

The mother testified at the deprivation hearing, but the putative father did not. The mother testified that she had not abused the child nor seen anyone else do so. She added that the paternal grandmother helped take care of T. J. for the first month of his life. But, when the investigator initially interviewed the mother at the hospital, she stated that the paternal grandmother had babysat the child on only one occasion. The evidence otherwise showed that the mother and putative father were the only caretakers for the child. The mother also never directly responded to a question by the investigator of how the injuries occurred. The father failed to respond at all. Neither parent provided an explanation at the hospital for the child's injuries, although they later suggested to the investigator that the child may have brittle bone disease.

The mother and father offered three doctors as experts. Dr. John Galaznik testified that the subdural hematomas could have resulted from birth and that the other fractures were not consistent with child abuse but possibly rickets. But he admitted that he had not reviewed the radiology reports or the geneticist's report. Dr. Barnes, a pediatric neuroradiologist, testified that the child's head injuries were nonspecific as to causation and did not indicate nonaccidental abuse or injury, although he could not rule it out. Dr. Buttram testified that the original subdural hemorrhage took place at birth and that the hemorrhages could have been aggravated by subsequent vaccinations.

The mother and father also point out that Dr. Drake-Forte, the child's treating pediatrician, testified that T. J. was born premature but that he had not exhibited any bruises or pain during eight checkups or visits that occurred before the child was four months old. And the mother kept all of the scheduled visits. When the child was four months old, Dr. Drake-Forte noted that his head had grown large, and therefore the doctor referred the child to a neurosurgeon, which ultimately led to the x-rays and scans that revealed the injuries. Dr. Drake-Forte never suspected child abuse; but the doctor also testified that the child never exhibited vitamin deficiency or rickets.

Under OCGA § 15-11-2 (8) (A), a child is deprived when he or she is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." This definition focuses upon the needs of the child regardless of parental fault:

> "The petition is brought on behalf of the child and it is (the child's) welfare and not who is responsible for the conditions which amount to deprivation that is the issue." *Brown v. Fulton County Dept. of Family &c. Svcs.*, 136 Ga. App. 308, 310 (2) (220 SE2d 790) (1975).

*In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997). "The juvenile court's primary responsibility is to consider and protect the welfare of children whose well-being is threatened. OCGA § 15-11-1 (1)." *In the Interest of B. H.*, 190 Ga. App. 131, 133 (1) (378 SE2d 175) (1989). Furthermore, unexplained injuries may constitute evidence of deprivation. See, e.g., *In the Interest of J. V.*, 241 Ga. App. 621, 626 (526 SE2d 386) (1999). See also *In the Interest of H. E.*, 272 Ga. App. 604 (612 SE2d 909) (2005) (failing to protect children from harm is evidence of deprivation).

In this case the cause of the injuries is unknown. Although the parents' experts have offered explanations for the injuries that do not involve abuse, and a question was raised about whether another

child's x-rays were mixed up with T. J.'s, this Court does not weigh the evidence or resolve questions of credibility. And, construing the evidence in favor of the juvenile court's judgment, we conclude that a rational trier of fact could have found by clear and convincing evidence that the child was deprived and needed protection. Further proceedings will be necessary to resolve these other questions.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JUNE 7, 2005.

*Bashuk & Glickman, Jeffrey A. Bashuk, Willie G. Davis, Jr.,* for appellants.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Robert E. Hall,* for appellee.