A07A0363. IN THE INTEREST OF S. V., a child.
(648 SE2d 109)

RUFFIN, Judge.

The biological mother challenges the juvenile court's order in which it found S. V. to be deprived. As the clear and convincing evidence supports the juvenile court's ruling, we affirm.

On appeal from a deprivation order, we view the evidence in a light most favorable to the juvenile court's ruling to ascertain "whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived."[1] In so doing, we neither weigh the evidence nor assess witness credibility.[2]

Viewed in this manner, the evidence shows that S. V. was born in April 1998. In July 2002, when S. V. was four years old, she was sexually abused by her mother's live-in boyfriend. According to the doctor who examined S. V. at that time, she had injuries to her genitalia consistent with either digital or penile penetration. After the boyfriend was convicted and imprisoned, the mother was in dire financial straits, and the Department of Family and Children Services (DFCS) provided services to assist her in obtaining stable housing.

In September 2003, DFCS received a report that S. V. had been physically abused. Eventually, S. V. was removed from her mother's care because the mother lived in an unsafe environment in which known drug users were present. Initially, S. V. lived with relatives, but in February 2004 she was taken into protective custody.[3] In January 2005, DFCS petitioned the juvenile court to return six-year-old S. V. to her mother's custody. By order dated January 27, 2005, the court returned S. V. to her mother's care with certain protective provisions, including that the mother "maintain a safe home."

---

[1] (Punctuation omitted.) *In the Interest of T. J.*, 273 Ga. App. 547, 547-548 (615 SE2d 613) (2005).

[2] See id. at 548.

[3] Apparently, DFCS devised a reunification plan that was allegedly approved by the juvenile court. However, the portion of the record containing the plan is missing. Fortunately, the case plan is not necessary to resolve the issue on appeal. But we take this opportunity to remind counsel that it is their obligation to ensure that the record before this Court is complete. See *Hensley v. Young*, 273 Ga. App. 687, 688 (615 SE2d 771) (2005) (" 'It is the primary responsibility of the appropriate parties and not this court to ensure that all documents relevant to the disposition of an appeal be duly filed with the clerk of this court prior to the issuance of our appellate decision.' ").

Because the mother still displayed certain shortcomings — such as sending S. V. to school dressed inappropriately and failing to take her child to scheduled medical appointments — the juvenile court ordered in June 2005 that additional DFCS services be provided. Of concern to DFCS was the fact that the mother had a new, live-in boyfriend, Anthony Woodard. The DFCS case manager explained to the mother that the mother should not have a man living in the house in order to better develop her relationship with her daughter and to reduce the risk of sexual abuse to the child. But the mother was intractable and insisted she would continue to live with Woodard.

In July 2005, S. V. told her godmother, Valerie Mincey, that Woodard had "messed with her." Upon further questioning, S. V. indicated that Woodard had penetrated her with his penis and that her "bottom was hurting." According to Mincey, she observed blood in the child's undergarments. When Mincey was unable to locate the mother, she called the sheriff's department.

S. V. was taken for a medical examination on July 13, 2005. Although the examination did not reveal signs of recent trauma, the doctor testified that the prior molestation could make it impossible to tell if S. V. had recently been penetrated. During a forensic interview on the same date, S. V. told the interviewer that Woodard "had put his ding-a-ling/wing . . . in her privacy."

S. V. was, once again, taken into DFCS's custody. A new reunification plan was devised that required, in pertinent part, that Woodard not reside in the home or have contact with the child. Although the mother signed the plan, she told the DFCS case manager that she would not abide by the requirement that Woodard live elsewhere, stating that S. V. had lied about the abuse.

DFCS subsequently petitioned the juvenile court to terminate the mother's parental rights and to extend DFCS's custody of S. V. pending termination. Although the juvenile court declined to terminate the mother's parental rights, it nonetheless found that S. V. was deprived, and it extended DFCS's custody of the child for a period of 12 months.

On appeal, the mother contends that the clear and convincing evidence does not support the juvenile court's ruling that S. V. is deprived. Specifically, she points to the lack of conclusive evidence that Woodard actually molested her child. We find no basis for reversal.

Under OCGA § 15-11-2 (8) (A), a child is deprived if she is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental, or emotional health or morals." In determining whether a child is deprived, a "juvenile court's primary responsibility is to

consider and protect the welfare of [the child] whose well-being is threatened."[4] Parental fault — or lack thereof — is not the focus of the inquiry.[5]

Here, the record shows that at the age of four, S. V. was sexually molested by the mother's live-in boyfriend. Notwithstanding this early trauma, the mother categorically refuses to believe that another boyfriend might also have molested her child, and she continues to reside in the same house with him.[6] Even assuming, for the sake of argument, that Woodard did not molest S. V., the fact that a seven-year-old child would make such allegations suggests that her emotional health needs are not being met. And, given the mother's history in dating abusers, her absolute refusal to acknowledge the possibility that her daughter is telling the truth is troublesome. Under these circumstances, the juvenile court was authorized to conclude that the mother's failure to protect her child from emotional — if not physical — harm constituted deprivation.[7]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JUNE 11, 2007.

*Stephanie D. Burton*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charles M. Johnson*, for appellee.

---

[4] (Punctuation omitted.) *In the Interest of S. Y.*, 284 Ga. App. 218, 219 (644 SE2d 145) (2007).

[5] See *In the Interest of T. J.*, supra at 549.

[6] According to DFCS, the mother married Woodard several months after the hearing.

[7] See *In the Interest of A. B.*, 283 Ga. App. 131, 136 (1) (b) (640 SE2d 702) (2006) (parents the cause of deprivation where they failed to protect children from "possibility" that allegations of abuse were true); *In the Interest of S. Y.*, supra; *In the Interest of H. E.*, 272 Ga. App. 604, 608 (612 SE2d 909) (2005) (failing to protect children from harm is evidence of deprivation).