**FIFTH DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and BETHEL, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 22, 2017**

# In the Court of Appeals of Georgia

A17A0161. JEWELL v. McGINNIS et al.

MILLER, Presiding Judge.

This is the second appearance of this grandparent custody case in this Court. In *Jewell v. McGinnis*, 333 Ga. App. 108 (775 SE2d 539) (2015) ("Jewell I"),[1] this Court vacated the superior court's order granting joint legal custody to the mother and the paternal grandparents, with primary physical custody to the grandparents. Further, in *Jewell I*, this Court remanded the case with direction for the superior court to make the statutorily required factual findings by clear and convincing evidence under OCGA § 19-7-1 (b.1). On remand, the superior court entered a new order (the "Revised Custody Order"), which contained factual findings and again granted joint

---

[1] The relevant facts in this case are set out in *Jewell I*.

legal custody to the mother and grandparents and primary physical custody to the grandparents.

1. The mother appeals from the superior court's Revised Custody Order, contending, inter alia, that OCGA § 19-9-6 does not authorize an award of joint legal custody to a parent and a third party. We agree, and therefore we reverse the award of joint legal custody in this case and remand for further proceedings consistent with this opinion.

The Supreme Court of Georgia and this Court have both held that a third party may have *sole legal custody* of a child when no parent is suitable for custody; however, Georgia statutory law only supports *joint legal custody* arrangements between parents. *Stone v. Stone*, 297 Ga. 451, 455 (774 SE2d 681) (2015); *Sheffield v. Sheffield*, 338 Ga. App. 667, 669 (791 SE2d 428) (2016); *Marks v. Soles*, 339 Ga. App. 380, 386 (2) (793 SE2d 587) (2016). See also OCGA § 19-9-6 (5) ("Joint legal custody means both parents have equal rights and responsibilities for major decisions concerning the child[.]") (punctuation omitted.); OCGA § 19-9-3 (a) (1) (setting out general custody guidelines and recognizing that joint custody considerations remain with the child's parents).

The superior court had no power to grant joint legal custody to the mother and the paternal grandparents. Consequently, we must reverse that award and remand this case for further proceedings. *Stone*, supra, 297 Ga. at 455.

2. In light of our holding in Division 1, we need not address the mother's remaining argument.

*Judgment reversed and case remanded with direction. Bethel, J., concurs. McFadden, P. J., concurs fully and specially.*

A17A0161. JEWELL v. McGINNIS et al.

MCFADDEN, Presiding Judge, concurring specially.

I agree that we must reverse and remand. I concur fully in Division 1: the trial court was not authorized to award joint legal custody to a parent and a third-party. But I disagree with Division 2. We must address — and reverse — the trial court's finding "that the child would suffer both physical and significant emotional harm if she were placed in the custody of [the mother]."

As the majority notes, this case is now before us for the second time. The first appeal was by the mother from an order "awarding joint legal custody of her daughter, C. M., to Jewell and to the child's paternal grandparents, Stephen and Diane McGinnis, with primary physical custody to the grandparents." *Jewell v. McGinnis*,

333 Ga. App. 108 (775 SE2d 539) (2015). "[W]e vacate[d] and remand[ed] the case for the trial court to make ... findings under the required standard." Id. at 111 (3). Those findings included whether "parental custody would harm the child physically or emotionally." Id. That finding is required by a gloss our Supreme Court put on the grandparent custody statute, OCGA § 19-7-1 (b.1), when the statute's constitutionality was challenged. *Clark v. Wade*, 273 Ga. 587 (544 SE2d 99) (2001).

On remand after *Jewell I,* the trial court found the requisite prospect of harm. The mother has enumerated that finding as error. And error it is. It is error that would surely drive the proceedings on remand and so generate a third appeal and a third remand.

Such delay is always a denial of justice. But delay is particularly harmful to children. This child was six years old when her grandparents first filed an emergency motion seeking custody of her. She is now almost ten. This litigation has already overshadowed too much of her childhood.

We have explained as follows the findings required under OCGA § 19-7-1 (b.1) for a transfer of custody from a parent to a third party:

> OCGA § 19-7-1 (b.1), which governs custody disputes between a biological parent and a limited number of third parties who are related to the child, including grandparents. OCGA § 19-7-1 (b.1) establishes

a rebuttable presumption that it is in the best interest of the child to award custody to the parent of the child. The following three presumptions are implicit in the statute: (1) the parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her child, and (3) the child's best interest is to be in the custody of a parent. The presumption can nonetheless be overcome by the third-party relative showing, by clear and convincing evidence, that parental custody would harm the child. Harm in this context has been defined as either physical harm or significant, long-term emotional harm, not merely social or economic disadvantages. Once the presumption has been overcome, the third-party relative must prove that an award of custody to him or her will best promote the child's health, welfare, and happiness. *Thus, in applying the legal standard set forth in OCGA § 19-7-1 (b.1), the trial court need not determine that the parent seeking custody is unfit, only that the third-party relative has established by clear and convincing evidence that awarding custody to the parent would cause either physical harm or significant, long-term emotional harm to the child.* If the third-party relative meets this burden, then the relative must show that an award of custody to him or her would best promote the child's health, welfare, and happiness.

*Trotter v. Ayres*, 315 Ga. App. 7, 8-9 (2) (726 SE2d 424) (2012) (citations and punctuation omitted; emphasis supplied).

Here, the trial court found that awarding custody to the mother would cause both physical harm and significant, long-term emotional harm to the child. But the evidence cannot sustain that finding.

The court cited testimony of a counselor that the child had a strong bond with the grandparents, that the child showed anxiety when asked about the mother, that the

3

counselor could not continue counseling the child if she moved to the mother's home, that changing schools would not be good for the child, and that the child was uncomfortable with the schedule of spending alternating weeks with the mother and grandparents. "[T]he type of harm noted by the trial court falls within that level of stress and discomfort that is an acceptable price for reuniting a child with a parent, and is insufficient to infringe the fiercely guarded right of a parent to have legal and physical custody of his or her child." *Bell v. Taylor*, 334 Ga. App. 267, 269 (779 SE2d 42) (2015) (citations omitted).

The trial court also pointed to evidence that the mother had allowed sexually provocative photographs of herself (in which she is fully clothed) to be used as advertising for her husband's business and to an allegation that the mother had posted a "boastfully promiscuous" comment on Facebook. In the first place there is no evidence to support the finding about a Facebook comment. Regardless, those findings cannot sustain the trial court's conclusion. The trial court speculated that the child might someday be teased about the photographs or the alleged Facebook comment. But such speculation, particularly in the absence of any showing that these matters have actually caused any harm to the child, does not support an award of custody to the grandparents. See *Bowman v. Bowman*, 234 Ga. 348, 350 (216 SE2d

4

103) (1975) (findings that father was too young to care for children and was delinquent in work habits were insufficient to support award of custody to a third party); *In re M. M. A.*, 166 Ga. App. 620, 624 (1) (305 SE2d 139) (1983) (possibility that child may receive superior influences or amenities in third-party custody is insufficient to justify taking child from natural parents).

The trial court also focused on the mother's formerly meretricious relationship with her husband. At a 2014 hearing, three months after the grandparents filed their emergency motion for custody, the mother's husband testified that they had been in a committed relationship for "[g]oing on 2 ½, 3 years" but had married a month earlier. Asked if they had married in response to something the trial court had said, he answered,

> We had already planned on getting married. It is just the actual ceremony had sped up some.
>
> ....
>
> I was wanting to give Lindsey the marriage and ceremony that I thought she deserved, so we were going to either wait until next year, or the year after, and have a big wedding and reception, and the whole nine yards.

In the 2016 order now before us, the trial court wrote,

5

The Court is similarly concerned that it apparently never occurred to Ms. Jewell that her living with Mr. Fitton in a meretricious relationship was potentially harmful to her children until the Court said something about it.

The trial court is again in error.

Georgia's appellate courts have held that a parent's cohabitation with someone, regardless of that person's gender, is not a basis for denying custody or visitation absent evidence that the child was harmed or exposed to inappropriate conduct. See, e.g., *Hayes v. Hayes*, 199 Ga. App. 132, 133 (404 SE2d 276) (1991) (affirming the trial court's finding that there was no change in material circumstances even though both parents were involved in meretricious relationships, because there was no evidence that the child had been exposed to inappropriate conduct); *Livesay v. Hilley*, 190 Ga. App. 655, 656–657 (2) (379 SE2d 557) (1989) (mother's cohabitation provides no basis for a change in custody absent evidence of harm to the child); see also *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001) (wherein the Supreme Court of Georgia reversed an order which prohibited contact between the children and their father's live-in girlfriend, because there was no evidence that the children had been exposed to inappropriate conduct or had been adversely affected by the relationship).

*Moses v. King*, 281 Ga. App. 687, 691–92 (637 SE2d 97) (2006) (physical precedent).

The trial court pointed to evidence that the child had a rapid weight gain. But no witness could pinpoint the exact cause of this change.

6

Finally the trial court cited evidence that the while with the mother, the child had gotten minor cuts and bruises when she was allowed to take a stray dog around the neighborhood in search of its owner. But those cuts and bruises were minor. And while the trial court found that the child had been unsupervised, there is once again no evidence to support that finding.

In short, the evidence does not support a finding, by clear and convincing evidence, that awarding custody to the mother would cause either physical harm or significant, long-term emotional harm to the child. Compare *Strickland v. Strickland*, 298 Ga. 630 (783 SE2d 606) (2016) (sufficient evidence children would be harmed if placed with mother where mother lacked income and a stable residence, her interest in the children was sporadic, she was a drug abuser, and had drug-related arrests); *Harris v. Snelgrove*, 290 Ga. 181, 183-194 (2) (718 SE2d 300) (2011) (clear and convincing evidence that child would suffer physical and emotional harm if placed with biological parents where there were drugs, alcohol, violence, and arrests in the home; the child was asked to give urine so that others in the household could pass drug tests; and the mother removed the child from school, saying that she would home school him, but then failed to do so).

I would therefore reverse the trial court's custody order on that ground as well.